## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

THE PROTECT DEMOCRACY )
PROJECT, INC. )
           )
       *Plaintiff*, )
           )
    v. )  Civil Case No. 1:17-cv-00842
           )
U.S. DEPARTMENT OF DEFENSE, )
U.S. DEPARTMENT OF JUSTICE, and )
U.S. DEPARTMENT OF STATE, )
           )
           )
      *Defendants*. )
           )

## MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION

This is an action under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, seeking the release of records to inform the public of the Administration's assessment of its legal authority to initiate military action against the government of Syria.  The day after the U.S. military conducted strikes against Syria on April 6, 2107, The Protect Democracy Project, Inc. ("Protect Democracy") submitted five nearly identical FOIA requests:  one to each of four components of the U.S. Department of Justice (DOJ) – the Office of the Attorney General (OAG) and the Office of the Deputy Attorney General (ODAG), the Office of Legal Counsel (OLC), and the National Security Division (NSD) – one to the U.S. Department of Defense (DOD); and one to the U.S. Department of State (State).  Protect Democracy's requests sought records concerning whether the President had received a legal opinion authorizing the strike and, if so, what the legal justification was.

Protect Democracy requested that the agencies process those FOIA requests on an expedited basis because the records sought could inform the public on an urgent Federal Government activity that is a matter of widespread media interest.  The President had indicated in a letter to Congress that he might escalate the conflict, and the legal basis for the strikes was of significant interest to the American public and Congress.  While the DOJ's OAG and OLC granted Protect Democracy's request for expedited processing, DOJ's ODAG and NSD have yet to make a determination, and DOD and the State Department erroneously denied it.

Last Thursday, the Administration took additional military action against the Syrian regime – all without ever having disclosed the President's legal justification for initiating this conflict.  In light of this continued military action, Protect Democracy's Motion for a Preliminary Injunction seeks to compel all Defendants to process its FOIA requests on an expedited basis, and produce all requested records (or acknowledge if there are no such records) without further delay.  Such relief is necessary to avoid the irreparable harm that would occur if the military conflict escalates further while, at the same time, the American people and their elected representatives are denied the information they need to participate in democratic debate. Delaying the release of responsive records until it is too late to have a meaningful debate before further escalation would defeat the purpose of FOIA "to ensure an informed citizenry, vital to the functioning of a democratic society."  *N.L.R.B. v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 241 (1978).

## STATEMENT OF FACTS

I.     **RECENT INITIATION OF U.S. MILITARY ACTION AGAINST SYRIA AND ACCOMPANYING PUBLIC AND CONGRESSIONAL DEBATE.**

On April 6, 2017, the United States military launched 59 Tomahawk cruise missiles at a Syrian government airbase.[1]  Again, on May 18, 2017, the United States military, with coalition forces, conducted 19 strikes and 27 engagements against Syrian pro-regime forces at At Tanf, Syria.[2]  These military actions were the United States' first use of force against the government of Syria.  The Administration did not, and has not, explained its legal rationale for the use of military force against the Syrian regime.

There is no readily apparent domestic or international authorization for the use of force against Syria.  In 2013, then-President Obama announced that he would not take military action against the Syrian government absent a Congressional authorization, which he sought,[3] but Congress did not enact.[4]  The United Nations Charter, a treaty ratified by the United States, permits the use of force against another country only with the permission of the United Nations

---

[1]  Lisa Ferdinando, U.S. Strike Designed to Deter Assad Regime's Use of Chemical Weapons, DoD News, Apr. 7, 2017, https://www.defense.gov/News/Article/Article/1145665/us-strike-designed-to-deter-assad-regimes-use-of-chemical-weapons/

[2]  Operation Inherent Resolve, Coalition Statement on At Tanf Garrison, May 18, 2007, http://www.inherentresolve.mil/News/News-Releases/Article/1186578/coalition-statement-on-at-tanf-garrison/

[3]  Statement by the President on Syria, Aug. 31, 2013, https://obamawhitehouse.archives.gov/the-press-office/2013/08/31/statement-president-syria

[4]  Congressional Research Service, Armed Conflict in Syria: Overview and U.S. Response, May 16, 2017 https://fas.org/sgp/crs/mideast/RL33487.pdf ("In 2013, the Senate Foreign Relations Committee considered and reported a proposed authorization for the use of military force following a chemical weapons attack in the suburbs of Damascus, Syria (S.J.Res. 21). The Senate did not consider the measure further.").

Security Council or as a matter of self-defense, but there is no such resolution providing legal authority for military action against the Syrian government.[5]

The Administration has not released any formal or informal legal opinion setting forth its justification for the Syria strikes.  The President's April 8, 2017 letter to Congress pursuant the War Powers Act is notably devoid of legal analysis.  That letter states that the President "acted in the vital national security and foreign policy interests of the United States, pursuant to [his] constitutional authority to conduct foreign relations and as Commander in Chief and Chief Executive."[6]  The President's letter further states that "[t]he United States will take additional action, as necessary and appropriate, to further its important national interests."  *Id.*  That April 8 notification, hardly more than a page long, does not name any domestic or international legal justification for the strikes, or identify any legal limits on the power of the executive to take additional military action.  Since then, neither the President nor any Administration official has publicly released a legal opinion, legal analysis, memorandum, or other written record of the legal justification under domestic and international law authorizing the military action in Syria.

While some Administration officials have publicly discussed the military action, the rationales have been inconsistent.  On April 10, 2017, White House spokesman Sean Spicer cited humanitarian reasons and ISIS, and claimed that the Constitution gives the President "the full authority to act" whenever military force is "in the national interest."[7]  The same day, Secretary

---

[5]  Charlie Savage, *Was Trump's Syria Strike Illegal? Explaining Presidential War Powers, N.Y. Times*, Apr. 7, 2017, https://www.nytimes.com/2017/04/07/us/politics/military-force-presidential-power.html?_r=0

[6]  President Donald J. Trump, A Letter from the President to the Speaker of the House of Representatives and the President Pro Tempore of the Senate, Apr. 8, 2017, https://www.whitehouse.gov/the-press-office/2017/04/08/letter-president-speaker-house-representatives-and-president-pro-tempore.

[7]  Daily Press Briefing by Press Secretary Sean Spicer -- #35, Apr. 10, 2017,

of State Rex Tillerson referred to "holding to account any and all who commit crimes against the innocents anywhere in the world."[8]  On April 11, 2017, Defense Secretary James Mattis focused on "the defeat of ISIS."  He also described the decision to use a military response in Syria as the best way to "deter the regime" from using chemical weapons in violation of international prohibitions.[9]  To Plaintiff's knowledge, the Department of Justice has not issued any public or official statement explaining the legal justification for the actions in Syria.  This is in contrast to the Department of Justice's actions in 2011 when the United States initiated the use of force against Libya.  Then, the Department of Justice's Office of Legal Counsel published a 14-page "Memorandum Opinion for the Attorney General" on the legal authority for the strikes.[10]

The United States and international community have debated how to respond to the brutal acts of Syrian President Bashar al-Assad, who has carried out a horrifying campaign of atrocities against the people of Syria, including using chemical weapons against civilians.  That difficult debate has focused on what type of response would be appropriate, effective, and lawful under domestic and international law.

---

https://www.whitehouse.gov/the-press-office/2017/04/10/daily-press-briefing-press-secretary-sean-spicer-35

[8] Gardiner Harris, *Tillerson Says U.S. Will Punish 'Crimes Against the Innocents' Anywhere*, *N.Y. Times*, Apr. 10, 2017, https://www.nytimes.com/2017/04/10/world/europe/rex-tillerson-russia-syria.html

[9] Terri Moon Cronk and Lisa Ferdinando, *Mattis: 'No Doubt' Syrian Regime Responsible for Attacks on Citizens*, DoD News, Apr. 11, 2017, https://www.defense.gov/News/Article/Article/1148560/mattis-no-doubt-syrian-regime-responsible-for-chemical-attacks-on-citizens/

[10] Caroline D. Krass, Principal Deputy Assistant Attorney General, Memorandum Opinion for the Attorney General, Authority to Use Military Force in Libya, Apr. 1, 2011, https://fas.org/irp/agency/doj/olc/libya.pdf

To resolve that debate, our Constitution divides war-making powers between Congress and the President.  This is both to avoid a situation in which it is too easy for one person to initiate a war, and to ensure that the United States only goes to war when the people support doing so.  In order for Congress to exercise its role as a representative of the people, the people must be able to provide their representatives with their views.  In Congress, debate has been ongoing about how to end the violence in Syria, for example, through a new congressional authorization of military force, e.g., H.J. Res. 89,[11] H.J.Res. 100,[12] S.J.Res. 31,[13] or by calling on the United Nations Security Council to take decisive action in response to Assad's "crimes against humanity," as in S.Res. 116, which the Senate Foreign Relations Committee reported to the Senate;[14] or to use "all diplomatic and coercive economic means" to compel the Syrian government to "immediately halt the wholesale slaughter of the Syrian people," as in H.R. 1677, which the House of Representatives approved.[15]  The public cannot have an informed debate, and share their views with their representatives in Congress about military actions that are now escalating, in the absence of information from Defendant agencies about the legal authority that is being asserted.   For the records to serve their purpose in informing the public on these

---

[11]  H.J. Res. 89, Authorization for Use of Military Force Against al-Qaeda, the Taliban, and the Islamic State of Iraq and Syria, 115th Cong. (2017).

[12]  H.J.Res. 100, Consolidated Authorization for Use of Military Force Resolution of 2017, 115th Cong. (2017).

[13]  S.J.Res. 31, Authorization for Use of Military Force Against al-Qaeda, the Taliban, and the Islamic State of Iraq and Syria, 115th Cong. (2017).

[14]  S.Res. 116, A resolution condemning the Assad regime for its continued use of chemical weapons against the Syrian people, 115th Cong. (2017).

[15]  H.R. 1677, Caesar Syria Civilian Protection Act of 2017, 115th Cong. (2017).

matters, there is urgency in accessing the requested information from Defendant agencies and

making it widely available, which Plaintiff seeks to do.

## II.     PLAINTIFFS FOIA REQUESTS, REQUESTS FOR EXPEDITED PROCESSING, AND RESPONSES FROM DEFENDANTS.

On April 7, Plaintiff sent multiple FOIA requests by fax to Defendant DOJ and its

components, OAG, ODAG, OLC, and NSD, as well as to DOD and the State Department.

Plaintiff's request, which was identical but for the name of the receiving agency, sought the

following records:

> Any and all records, including but not limited to emails and
> memoranda, reflecting, discussing, or otherwise relating to the
> April 6, 2017 military strike on Syria and/or the President's legal
> authority to launch such a strike.  This request includes, but is not
> limited to, internal Department of Justice communications,
> communications between Department of Justice employees and the
> Executive Office of the President, and communications between
> Department of Justice employees and other agencies.

The timeframe for the request was "April 4, 2017 through the present."  *See* Ex. A (DOJ DAG

AND ODAG FOIA request), Ex. B (OLC FOIA Request), Ex. C (NSD FOIA Request), Ex. D

(DOD FOIA Request) and Ex. E (State FOIA Request).  For all of the FOIA requests, Plaintiff

also sought expedited processing pursuant to 5 U.S.C. § 552(a)(6)(E) and the agency-specific

regulations.

### A.     Plaintiff's FOIA Responses from DOJ and its Components, OAG, ODAG, OLC, and NSD

Protect Democracy sought expedited processing from DOJ's OAG, ODAG, OLC, and

NSD under the applicable statute as well as DOJ's regulations because the request concerns "[a]

matter of widespread and exceptional media interest in which there exist possible questions

about the government's integrity that affect public confidence," 28 C.F.R. § 16.5(e)(1)(iv), as

well as because there is "urgency to inform the public about an actual or alleged Federal

Government activity."  28 C.F.R. § 16.5(e)(1)(ii).  Both the OAG and OLC granted Plaintiff's

request for expedited processing.  *See* Ex. F (Response from OAG Apr. 13, 2017), and Ex. G

(Response from OLC Apr. 26, 2017).

       Pursuant to FOIA, within 20 business days of receipt of Plaintiff's request, Defendant

was required to "determine . . . whether to comply with request" and to "immediately notify"

Plaintiff of "such determination and the reasons therefor."  5 U.S.C. § 552(a)(6)(A)(i).  Neither

OAG nor OLC had completed a search to make that determination.  *See* Ex. F ("[W]e have not

yet completed a search to determine whether there are records with the scope of your request.");

Ex. G ("[S]taff has not yet been able to complete a search to determine whether there are

documents within the scope of your request.").  NSD did not make a decision on Plaintiff's

request for expedited processing, stating that it was "under consideration."  Ex. H (Response

from NSD Apr. 14, 2017).  ODAG has not yet responded to Plaintiff's FOIA request.  As of the

filing of this motion, 32 business days have elapsed since the DOJ Defendants acknowledged

receiving the FOIA requests, but Protect Democracy has not received any further communication

from them.

    **B.**    **Plaintiff's FOIA Response from DOD**

       Protect Democracy sought expedited processing from DOD under 5 U.S.C. §

552(a)(6)(E) and DOD's regulations, when "[t]he information is urgently needed by an

individual primarily engaged in disseminating information in order to inform the public

concerning actual or alleged governmental activity."  32 C.F.R. § 286.8(e)(1)(i)(B).  DOD

denied Plaintiff's request, stating that Plaintiff did "not clearly demonstrate[ ] how the

information will lose its value if not processed on an expedited basis."  *See* Ex. I (Response from

DOD Apr. 12, 2017). Instead, DOD placed Plaintiff's request in its "complex processing queue," noting that it "workload is approximately 2400 open requests." *Id.*

Thirty-one business days have now passed since DOD acknowledged receiving Plaintiff's request, and DOD has not only failed to expedite the processing of the request but also exceeded both the twenty-day deadline for processing of any request, and the 10-day extension it could have invoked, which it did not properly do. *See* 5 U.S.C. § 552(a)(4)(B)(i) ("No such notice shall specify a date that would result in an extension for more than ten working days . . . ."); 32 C.F.R. 286.8(c) ("Whenever the statutory time limit for processing a request cannot be met because of "unusual circumstances," as defined in the FOIA, and the DoD Component extends the time limit on that basis, the DoD Component must, before expiration of the 20-day period to respond, notify the requester in writing of the unusual circumstances involved and of the date by which processing of the request can be expected to be completed."). DOD has not communicated any additional information to Plaintiff about the processing of its request, the status of its search, or even with an expected date of completion.

### C.     Plaintiff's FOIA Response from State

Like its other FOIA requests, Plaintiff sought expedited processing from State under 5 U.S.C. § 552(a)(6)(E) and State's regulations because "[t]he information is urgently needed by an individual primarily engaged in disseminating information in order to inform the public concerning actual or alleged Federal government activity." *See* 22 C.F.R. § 171.11(f). In response, State restated its expedited processing regulations and issued a vague denial of Plaintiff's request, without any particularized description of which element was at issue or how Plaintiff's request fell short. *See* Ex. J (Response from State Apr. 12, 2017). State has not provided additional information to Plaintiff, and thus has not met its obligation to respond within

20 business days under 5 U.S.C. § 552(a)(6)(ii), as 31 business days have passed since State acknowledged receiving Plaintiff's request.  State did not invoke any extension.  *See* Ex. J ("Unusual circumstances . . . may arise . . . .").

## ARGUMENT

The United States launched military strikes against the Syrian government on April 6, 2017.  Because of the urgency and gravity of a nation's decision to launch a new military conflict, the very next day, Plaintiff sought information about the legal justification through FOIA requests to Defendants.  Defendants failed to meet their obligations in responding to Plaintiff's FOIA requests.  On May 8, Plaintiff filed a complaint to seek this Court's assistance in compelling Defendants to comply.  The Administration has still not provided any explanation of its legal justification for the use of force.  Yet days ago, the United States conducted additional military strikes against the Syrian regime.  Plaintiff, and the public that Plaintiff seeks to inform, continue to be deprived of an opportunity to know the Administration's legal justification and meaningfully participate in public debate.

Plaintiff meets the requirements for preliminary injunctive relief.  Protect Democracy has a substantial likelihood of succeeding on the merits of its request, and on an expedited basis, as the OAG and OLC have already concluded.  Unless the court lifts the impediment that Defendants' inaction has posed, Plaintiff will be irreparably harmed by being denied the material necessary to inform the ongoing public and legislative debate. As this request comes after all Defendants have exceeded the statutory twenty-day deadline for processing any FOIA request, as well as any other extensions that may have been available to them, injunctive relief would impose no harm on Defendants.

I.       **THIS COURT HAS JURISDICTION TO GRANT THE REQUESTED RELIEF.**

Pursuant to the FOIA, this Court has jurisdiction to hear this matter and grant all

necessary injunctive relief:

> On complaint, the district court of the United States . . . in the
> District of Columbia, has jurisdiction to enjoin the agency from
> withholding agency records and to order the production of any
> agency records improperly withheld from the complainant. . . . In
> such a case the court shall determine the matter de novo.

5 U.S.C. § 552(a)(4)(B); *see also Dept. of Justice v. Reports' Comm. for Freedom of the*

*Press*, 489 U.S. 749, 755 (1989) ("Unlike the review of other agency action that must be

upheld if supported by substantial evidence and not arbitrary or capricious, the FOIA

expressly places the burden 'on the agency to sustain its action,' and directs the district

courts to 'determine the matter de novo.'").  The statute provides for that same review to

encompass an agency's "action to deny or affirm denial of a request for expedited

processing pursuant to this paragraph, and failure by an agency to respond in a timely

manner to such a request shall be subject to judicial review under paragraph (4)."  5

U.S.C. § 552(a)(6)(E)(iii); *see also Al-Fayed v. CIA*, 254 F.3d 300, 308 (D.C. Cir. 2001)

("[A] district court must review de novo an agency's denial of a request for expedition

under FOIA.").

Also, the FOIA statute provides that when a defendant fails to comply with the 20-

working day time limit, "a requester shall be deemed to have exhausted his administrative

remedies with respect to such request."  5 U.S.C. § 552(a)(6)(C); *see also Citizens for*

*Responsibility & Ethics in Washington v. Fed. Election Comm'n* ("*CREW*"), 711 F.3d 180, 188

(D.C. Cir. 2013); *Oglesby v. U.S. Dep't of Army*, 920 F.2d 57, 62 (D.C. Cir. 1990) ("If the

agency has not responded within the statutory time limits, then, under 5 U.S.C. § 552(a)(6)(C),

the requester may bring suit."). Here, where all Defendants have failed to comply with the time

limits in FOIA, Protect Democracy has exhausted all applicable administrative remedies, and this

claim is ripe for adjudication.

## II.    PROTECT DEMOCRACY IS ENTITLED TO A PRELIMINARY INJUNCTION.

Protect Democracy satisfies the four-factor test a court must apply when a plaintiff seeks

a preliminary injunction:

> (1) whether the plaintiff has a substantial likelihood of success on
> the merits; (2) whether the plaintiff would suffer irreparable injury
> absent injunctive relief; (3) whether an injunction would
> substantially injure other interested parties; and (4) whether the
> grant of an injunction would further the public interest.

*Al-Fayed v. CIA*, 254 F.3d at 303 (*citing Serono Labs., Inc. v. Shalala*, 158 F.3d 1313, 1317-18

(D.C. Cir. 1998)).  Weighing these factors firmly establishes that Plaintiff is entitled to injunctive

relief.

### A.    Protect Democracy Is Likely To Succeed on the Merits

Protect Democracy submitted FOIA requests to several DOJ components—including

OAG, ODAG, NSD, and OLC—as well as State and DoD, in which it requested expedited

processing.  OAG and OLC properly granted the request for expedition.  Yet, despite the fact

that they have acknowledged the urgency of the request, neither component has produced any

documents.  Other DOJ components have failed to make a determination on the request for

expedition, despite FOIA's requirement that they do so within ten days of the date of the request.

*See* 5 U.S.C. § 552(a)(6)(E)(ii)(I).  Finally, State and DOD erroneously denied Protect

Democracy's request for expedition, despite the fact that OAG and OLC—applying the same

statutory provisions and nearly identical regulations to the same set of facts—reached the

opposite conclusion.  *Cf. ACLU v. U.S. Dep't of Justice*, 321 F. Supp. 2d 24, 32 (D.D.C. 2004)

(finding agency's denial of expedited processing unreasonable where agency had granted a similar request for expedition a year earlier).

As explained below, OAG and OLC were correct to conclude that expedition is appropriate in this case. State and DOD, as well as those DOJ components that have not yet acted on the request for expedited processing, should be required to expedite Protect Democracy's request. Furthermore, all of the defendant agencies should be ordered to produce documents within a matter of days or explain why they cannot do so, as is warranted by the urgency of this matter.

### 1.       Protect Democracy is Entitled to Expedited Processing

FOIA provides that "[e]ach agency shall promulgate regulations . . . providing for expedited processing of requests for records" in cases of "compelling need" or "in other cases determined by the agency." 5 U.S.C. § 552(a)(6)(E). The statute defines "compelling need" as a circumstance where, *inter alia*, "with respect to a request made by a person primarily engaged in disseminating information," there is "urgency to inform the public concerning actual or alleged Federal Government activity." *Id.* § 552(a)(6)(E)(v)(II).

Each of the defendant agencies had adopted regulations regarding expedited processing. The applicable DOJ regulations provide for expedition for requests that involve "[a]n urgency to inform the public about an actual or alleged Federal Government activity, if made by a person who is primarily engaged in disseminating information," 28 C.F.R. § 16.5(e)(1)(ii), or "[a] matter of widespread and exceptional media interest in which there exist possible questions about the government's integrity that affect public confidence," *id.* § 16.5(e)(1)(iv). Similarly, the relevant State and DoD regulations provide for expedited processing where "[t]he information is urgently needed by an individual primarily engaged in disseminating information

in order to inform the public concerning actual or alleged government activity." 32 U.S.C. § 286.8(e)(1)(i)(B) (DoD regulations); *see also* 22 C.F.R. § 171.11(f)(2) (State regulations). Protect Democracy's requests are entitled to expedited processing under either of the standards articulated above.

> a. *There is an "urgency to inform" the public regarding the government activities that are the subject of Protect Democracy's FOIA request and Protect Democracy is "primarily engaged in disseminating information"*

Protect Democracy's FOIA request is entitled to expedition because it was "made by a person primarily engaged in disseminating information," and involves an "urgency to inform the public concerning actual or alleged Federal Government activity." 5 U.S.C. § 552(a)(6)(E)(v)(II); *see also* 28 C.F.R. § 16.5(e)(1)(ii); 32 U.S.C. § 286.8(e)(1)(i)(B); 22 C.F.R. § 171.11(f)(2).

As the D.C. Circuit has explained, the question of whether there is an "urgency to inform the public" turns on "at least three factors: (1) whether the request concerns a matter of current exigency to the American public; (2) whether the consequences of delaying a response would compromise a significant recognized interest; and (3) whether the request concerns federal government activity." *Al-Fayed v. C.I.A.*, 254 F.3d 300, 310 (D.C. Cir. 2001). There can be no question that Protect Democracy's request "concerns federal government activity."

The first two factors are also satisfied. *First*, the subject of the request—the President's decision to launch military strikes against Syria and, more specifically, his legal authority to do so—is of the utmost public importance and has been the focus of significant media attention. *See, e.g.*, Charlie Savage, *Was Trump's Syria Strike Illegal? Explaining Presidential War Powers*, N.Y. Times, Apr. 7, 2017, https://nyti.ms/2oaLUiz; *see also* 28 U.S.C. § 16.5(e)(3) ("The existence of numerous articles published on a given subject can be helpful in establishing

the requirement that there be an "urgency to inform" the public on the topic."). Members of

Congress have called on the Administration to explain the legal basis for the strikes.[16] Indeed,

whether the President has the legal authority to wage war—or used military force without legal

authorization—is a question that is fundamental to our democracy.

And as last week's continued military action against the Syrian regime demonstrates, this

issue is a matter of significant exigency.  As Protect Democracy explained when initially seeking

expedited processing, "this request is made all the more urgent by the possibility that the

President may decide to engage in further military action at any time."  That prediction has come

to pass.  Moreover, Congress is currently considering legislation or oversight actions related to

the Syrian regime, *see supra at 6,* and the public's ability to share their informed views with their

elected representatives.

Moreover, in the absence of written records, the conflicting claims about the executive's

legal authority contained in public statements of Administration officials, create confusion as to

the meaning, or even existence, of a legal rationale.  *See* Editorial Bd., *On Syria, an*

*Administration in Disagreement With Itself,* N.Y. Times, Apr. 10, 2017,

https://nyti.ms/2okYyKg.  Some of those explanations have suggested an astoundingly broad

interpretation of the President's authority to wage war.  For example, White House spokesman

Sean Spicer made the claim that the Constitution gives the President "the full authority to act"

whenever military force is "in the national interest."  *See* https://www.whitehouse.gov/the-press-

office/2017/04/10/daily-press-briefing-press-secretary-sean-spicer-35.  And the formal written

account from the Administration to Congress pursuant to the War Powers Resolution—a short

---

[16]  *See* Letter from Congressman Adam Schiff and Senator Tim Kaine to President Trump, Apr.
25, 2017, https://www.kaine.senate.gov/press-releases/congressman-adam-schiff-and-senator-
tim-kaine-send-letter-to-president-trump-asking-for-legal-basis-of-syria-strike.

letter offering only vague platitudes and lacking any statement of applicable legal standards—declares that "[t]he United States will take additional action, as necessary and appropriate, to further its important national interests," and conspicuously fails to say that the President recognizes domestic and international legal constraints on his authority.

In short, "the subject matter of the request [is] central to a pressing issue of the day" and, in that respect, resembles other requests for which courts have found that expedited processing is appropriate.  *Wadelton v. Dep't of State*, 941 F. Supp. 2d 120, 123 (D.D.C. 2013) (citing cases); *see also, e.g.*, *ACLU*, 321 F. Supp. 2d at 29-31; *Leadership Conf. on Civil Rights v. Gonzales*, 404 F. Supp. 2d 246, 260 (D.D.C. 2005).  The public has an immediate right to understand the Administration's position with respect to the legality of the recent strikes against Syria, and to assess whether that position is justified.

*Second*, further delay of a response here compromises Protect Democracy's strong interest in providing urgent information to the public about the legal authority of the Executive Branch in order to promote democratic debate and accountability.  As emphasized by *Am. Civil Liberties Union of N. California v. U.S. Dep't of Def.*, No. C 06-01698 WHA, 2006 WL 1469418, at *8 (N.D. Cal. May 25, 2006), "another recognized interest would be harmed by delay: the media's interest in quickly disseminating breaking, general-interest news. . . . . [P]laintiffs' request showed not only the public's need to know but also the urgency of the news."  Likewise, Protect Democracy's interest in quickly sharing information in the context of continued military strikes has an urgency that has been, and will continue to be harmed, by the delay in accessing the requested records.

Protect Democracy is "primarily engaged in disseminating information."  *See* Declaration from Ian Bassin, Ex. K.  As explained in the initial request, Protect Democracy's core mission is

to inform public understanding on operations and activities of the government by gathering and disseminating information that is likely to contribute significantly to the public understanding of executive branch operations and activities.  The organization operates in the tradition of 501(c)(3) good government organizations that qualify under FOIA as news media organizations under FOIA.  Like those organizations, the purpose of The Protect Democracy Project is to "gather information of potential interest to a segment of the public, use its editorial skills to turn the raw materials into distinct work, and distribute that work to an audience." *Nat's Sec. Archive v. Dep't of Defense*, 880 F.2d 1381, 1387 (D.C. Cir. 1989).  Indeed, Protect Democracy had routinely been granted fee waivers as a "representative of the news media" under FOIA.  *See ACLU*, 321 F. Supp. 2d at 29 n.5 (concluding that an organization is "primarily engaged in disseminating information" for the purpose of expedition based in part on its status as a "representative of the news media" for fee waiver purposes).

Despite being a relatively new organization, Protect Democracy has already demonstrated an ability to disseminate information about the subject matter of this request (and other requests) to a wide audience.  *See* Charlie Savage, *Watchdog Group Sues Trump Administration, Seeking Legal Rationale Behind Syria Strikes*, N.Y. Times, May 8, 2017, https://nyti.ms/2pX82OV; Justin Florence, *What's the Legal Basis for the Syria Strikes? The Administration Must Acknowledge Limits on its Power to Start a War*, Lawfare, May 8, 2017, https://lawfareblog.com/whats-legal-basis-syria-strikes-administration-must-acknowledge-limits-its-power-start-war.  Protect Democracy will continue to disseminate information about this request through its website (protectdemocracy.org); its Twitter feed (https://twitter.com/protctdemocracy), which has more than 9,000 followers; its email list of approximately 20,000 people; and through sharing information with other members of the press.

*See Leadership Conf.*, 404 F. Supp. 2d at 260 (finding that plaintiff organization was "primarily engaged in the dissemination of information" where it "disseminate[d] information regarding civil rights and voting rights to educate the public, promote effective civil rights laws, and ensure their enforcement by the Department of Justice").

> b. *The Administration's use of force constitutes a matter of "widespread and exceptional media interest" raising "possible questions about the government's integrity which affect public confidence"*

DOJ regulations also provide for expedited processing for requests involving "[a] matter of widespread and exceptional media interest in which there exist possible questions about the government's integrity that affect public confidence." 28 C.F.R. § 16.5(e)(1)(iv). In *ACLU v. U.S. Dep't of Justice*, 321 F. Supp. 32-33, the court granted plaintiff's request for expedited processing on this standard, relying on the news reports and congressional commentary about the controversy and possible government abuses under the relevant provision of the Patriot Act. Likewise, the Administration's military strikes against Syria have been criticized as possibly illegal or unconstitutional,[17] and Members of Congress have sought the legal basis from the President[18] and argued that Congressional authorization was necessary prior to taking military

---

[17]  *See, e.g.,* Charlie Savage, *Was Trump's Syria Strike Illegal? Explaining Presidential War Powers*, N.Y. Times, Apr. 7, 2017, https://nyti.ms/2oaLUiz; Amber Phillips, *Is President Trump's Strike on Syria Constitutional*, Wash. Post, Apr. 7, 2017, https://www.washingtonpost.com/news/the-fix/wp/2017/04/07/is-president-trumps-strike-on-syria-constitutional/?utm_term=.aa713a7618c5; Richard Lardner, *Can the President Attack a Country Without Congress?* AP, Apr. 6, 2017, https://www.usnews.com/news/politics/articles/2017-04-06/can-the-president-attack-another-country-without-congress

[18]  *See* Letter from Congressman Adam Schiff and Senator Tim Kaine to President Trump, Apr. 25, 2017, https://www.kaine.senate.gov/press-releases/congressman-adam-schiff-and-senator-tim-kaine-send-letter-to-president-trump-asking-for-legal-basis-of-syria-strike.

action.[19]  That standard is also satisfied here given that the OAG and OLC granted Plaintiff's

expedition request; ODAG and NSD, also part of DOJ, should come to the same conclusion.

2.      Protect Democracy is Entitled to the Requested Records

Because Protect Democracy's request is entitled to expedited processing, the defendant

agencies must produce them—or explain why they cannot do so—"as soon as practicable."  5

U.S.C. § 552(a)(6)(E)(iii).  Even under ordinary circumstances, *i.e.*, non-expedited processing,

FOIA imposes a 20-day time limit for an agency to make a "determination" regarding a FOIA

request, meaning that an agency "must at least: (i) gather and review the documents; (ii)

determine and communicate the scope of the documents it intends to produce and withhold. and

the reasons for withholding any documents; and (iii) inform the requester that it can appeal

whatever portion of the 'determination' is adverse."  *CREW,* 711 F.3d at 188; *see also Electronic

Privacy Info. Ctr. v. Dep't of Justice*, 15 F. Supp. 3d 32, 40 (D.D.C. 2014) (discussing *CREW*).

Once the agency has made a determination, it must "make the records 'promptly available,'

which depending on the circumstances typically would mean within days or a few weeks of a

'determination,' not months or years."  *CREW*, 711 F.3d at 188.

Again, the timeline described in *CREW* applies to ordinary processing.  Expedited

processing should move more quickly.  Indeed, a court in this district has held that there is a

rebuttable presumption that an expedited request should be processed within the 20-day statutory

timeline.  *See Electronic Privacy Info. Ctr. v. Dep't of Justice*, 416 F. Supp. 2d 30, 39 (D.D.C.

2006).  Here, despite the fact that the request was submitted more than six weeks ago, none of

the defendant agencies or components—not even OAG and OLC, which granted the request for

---

[19]  Editors, USAToday, Members of Congress, *Trump Needs Their Approval for Military Action
in Syria*, Apr. 6, 2017, https://www.usatoday.com/story/news/2017/04/06/twitter-remembers-
trump-called-out-obama-bypassing-congress-syria-attack/100153944/

expedited processing—has even made a determination regarding the request, let alone produced

documents.  This delay might be explicable if the request were complex or implicated a large

volume of documents, but it does not.  Instead, the request seeks documents about a very discrete

topic—the President's legal authority to launch military strikes against Syria—over a very short

time window ("April 4 through the present").  Therefore, defendants have failed to process

Protect Democracy's request "as soon as practicable," as FOIA requires.  There is no reason that

defendants should not be able to produce documents—or explain why they cannot do so—in

very short order.

Finally, Plaintiff recognizes it is possible that the Administration never prepared a legal

analysis before launching the strikes or consulted with lawyers in the Defendant agencies.  If that

is so, Defendants should promptly indicate the lack of any responsive records.  If there was no

legal analysis or consultation that too would greatly inform the public debate.

### B.      Protect Democracy Will be Irreparably Harmed Absent the Requested Relief.

Given the ongoing military action against Syria, and resultant public and Congressional

debate, Plaintiff will be irreparably injured if injunctive relief does not force the disclosure of the

requested materials.  "[I]rreparable harm can exist in FOIA cases . . .  because ongoing public

and congressional debates about issues of vital national importance 'cannot be restarted or

wound back.'"  *Elec. Frontier Found. v. Office of Dir. of Nat. Intelligence*, No. C 07-5278 SI,

2007 WL 4208311, at *7 (N.D. Cal. Nov. 27, 2007) (citing *Gerstein v. CIA,* 2006 WL 3462659

at *4 (N.D. Cal. Nov. 29, 2006)) (order granting motion to compel responses to FOIA requests).

In that case, the court agreed that the plaintiff would suffer irreparable harm if it did not

promptly receive "information from defendant specifically so that plaintiff, Congress, and the

public may participate in the [FISA amendment] debate over the pending legislation on an informed basis." *Id.* Also, in *Elec. Privacy Info. Ctr. v. Dep't of Justice*, 416 F. Supp. 2d 30, 41 (D.D.C. 2006), the Court "quickly rejected" the agency's argument that plaintiff could "fully participate in the current public debate" "[b]ased upon the information that the government has already made public" because it agreed with the plaintiff that "a meaningful and truly democratic debate on the legality and propriety of the warrantless surveillance program cannot be based solely upon information that the Administration voluntarily chooses to disseminate." In that case, the Court determined that the plaintiff was entitled to a preliminary injunction for information on the legality of a wireless surveillance program in order to be a timely participant in the public debate. *Id*; *see also Wash. Post. v. Dept. Homeland Security,* 459 F.Supp.2d 61, 75 (D.D.C. 2006) ("Without a preliminary injunction directing the Secret Service to process the plaintiff's FOIA request in an expedited fashion, the plaintiff would lose out on its statutory right to expedited processing and on the time-sensitive public interests which underlay the request.").

Here too, Protect Democracy will be irreparably injured if it is not provided the requested information. As explained above, the issue of the Administration's legal rationale for the Syrian strikes is a matter of national significance, shown by extensive news media and Congressional attention. *See supra at 6.* And the situation is a rapidly developing one, shown by the additional strikes that took place on May 18 and that could continue or escalate at any point. The public's ability to participate in a meaningful and informed debate about further military action against Syria is severely hampered by the Administration's failure to provide the legal rationale for its actions. Protect Democracy is entitled to injunctive relief to ensure it can participate in the time-sensitive public and Congressional debates regarding our country's increasing military actions towards Syria.

### C.      The Requested Relief Will Not Burden Others' Interests.

Protect Democracy seeks no other relief than the expedited treatment to which it is entitled under the law.  Defendants cannot claim that a request to comply with the law is a burden on others' interests, and, "any complaints about the burdens of complying with the law are best addressed to Congress, not the courts." *Elec. Frontier Found.,* 2007 WL 4208311, at *7 (citing *Fiduccia,* 185 F.3d at 1041).  Congress decided in 1996 to add the expedited processing provisions to FOIA, which "'underlined Congress' recognition of the value in hastening release of certain information." *See EPIC*, 416 F. Supp. 2d at 40 (citing *Edmonds v. FBI*, 417 F.3d 1319, 1324 (D.C. Cir. 2005).  Any concerns that Defendants or other requesters may raise about the effect of granting injunctive relief are very likely to be impacts that that Congress has already weighed and concluded are of subsidiary importance to compelling and time-sensitive cases, such as this.  Finally, in practical terms, it would be difficult for Defendants to argue that injunctive relief in this case would cause much delay to other requesters given the very specific nature of Plaintiff's FOIA requests and extremely limited time window ("April 4 through the present").

### D.      The Public Interest Favors the Requested Relief.

The final element of the four-factor test is met in this case as the public interest strongly favors injunctive relief.  The D.C. Circuit recognizes "there is an overriding public interest . . . in the general importance of an agency's faithful adherence to its statutory mandate." *Jacksonville Port Auth. v. Adams.,* 556 F.2d 52, 59 (D.C. Cir. 1977).  Expedited release of FOIA records promotes this element by "'shed[ding] light on an agency's performance of its statutory duties." *Dep't of Justice v. Reporters Comm. for Freedom of the Press,* 489 U.S. 749,

773  (1989); *Ctr. to Prevent Handgun Violence v. Dep't of Treasury,* 49 F. Supp. 2d 3, 5

(D.D.C.1999) ("There is public benefit in the release of information that adds to citizens'

knowledge").  Lastly, the "timely release" of information given media attention and

Congressional committee action makes the public interest "particularly well-served."  *EPIC*, 416

F. Supp. 2d at 42.

Protect Democracy's interest is not only in the Defendants' general adherence to their

statutory mandates, but in this particular case, disclosure of the requested records will serve the

public interest by allowing a meaningful public debate on the legal authority of the executive's

power to initiate military conflict.

## CONCLUSION

For the foregoing reasons, Protect Democracy's Motion for a Preliminary Injunction

should be granted to require Defendants to expedite the processing of Plaintiff's FOIA requests

and produce all non-exempt records and an index justifying the withholding of any withheld

records within twenty days, or by such other date as the Court deems appropriate.

Respectfully submitted,

Date:  May 22, 2017                  */s/  Allison F. Murphy*
                                    ALLISON F. MURPHY (DC Bar No. 975494)
                                         Allison.Murphy@protectdemocracy.org
                                    BEN BERWICK (MA Bar No. 679207)
                                         Ben.Berwick@protectdemocracy.org
                                    The Protect Democracy Project, Inc.
                                    2020 Pennsylvania Ave., NW #163
                                    Washington, DC 20006
                                    Phone: 202-599-0466
                                    Fax: 929-777-8428

                                    *Counsel for Plaintiff*