**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|                                                     |                              |
| --------------------------------------------------- | ---------------------------- |
| **PROTECT DEMOCRACY PROJECT, INC.**,                |                              |
| Plaintiff,                                          | Case No. 17-cv-00842 (CRC)   |
| v.                                                  |                              |
| **U.S. DEPARTMENT OF DEFENSE, et al.**,             |                              |
| Defendants.                                         |                              |

**MEMORANDUM OPINION**

On April 6, 2017, President Trump ordered Tomahawk cruise missile strikes against a Syrian-government airbase. The next day, The Protect Democracy Project, Inc. ("Protect Democracy") submitted requests under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, to the Department of State, the Department of Defense, and three separate components of the Department of Justice, seeking documents relating to the President's legal authority to launch the strikes. The organization also sought expedited processing. About one month later, with none of the requested documents and with two of its expedited processing requests having been denied, Protect Democracy brought suit in this Court. It then moved for a preliminary injunction, seeking to compel all three agencies to process its requests on an expedited basis, and to produce all responsive records by a date certain. For the reasons that follow, the Court will grant the former relief but deny the latter.

I.  **Background**

Agencies typically process FOIA requests in the order received, but FOIA's "expedited processing" provision recognizes that some requests are urgent enough to warrant a spot towards

the front of the line. 5 U.S.C. § 552(a)(6)(E). As relevant here, the statute directs that requests should be expedited where the requester shows a "compelling need" for the records sought, id. § 552(a)(6)(E)(i)(I)—which is the case where the requester is "primarily engaged in disseminating information," and there is an "urgency to inform the public concerning actual or alleged Federal Government activity," id. § 552(a)(6)(E)(v). Once expedited, requests must be "process[ed] as soon as practicable." Id. § 552(a)(6)(E)(iii). Agencies have promulgated regulations implementing these provisions. See 28 C.F.R. § 16.5(e) (DOJ expedited processing regulations); 32 C.F.R. § 286.8(e) (DOD regulations); 22 C.F.R. § 171.11(f) (State regulations). Despite modest variations among the schemes, they are materially the same: Each at a minimum implements the "compelling need" standard. See 28 C.F.R. § 16.5(e)(1)(ii); 32 C.F.R. § 286.8(e)(1)(i); 22 C.F.R. § 171.11(f)(2).

On April 7, 2017, the day after the U.S. conducted the above-referenced military strikes against the Syrian government, Protect Democracy sent FOIA requests to the Department of State ("State"), the Department of Defense ("DOD"), and three components of the Department of Justice ("DOJ"): the Office of Information Policy, which processes FOIA requests for the Offices of the Attorney General and Deputy Attorney General; the Office of Legal Counsel; and the National Security Division. See Pl.'s Mem. Supp. Mot. Prelim. Inj. ("MPI"), Exs. A–E. The identical requests sought:

> Any and all records [from April 4, 2017 through the present], including but not limited to emails and memoranda, reflecting, discussing, or otherwise relating to the April 6, 2017 military strike on Syria and/or the President's legal authority to launch such a strike. This request includes, but is not limited to, internal [agency] communications, communications between [agency] employees and the Executive Office of the President, and communications between [agency] employees and other agencies.

Pl.'s MPI, Ex. A, at 2. Protect Democracy also requested expedited processing, pointing among

2

other things to the public's "immediate right to understand the administration's position with respect to the legality of the recent strike against Syria, and to assess whether that position is justified." Id. at 2–3. Citing its website and 501(c)(3) status, the organization also noted that its "request [was] submitted in consort with [its] mission to gather and disseminate information that is likely to contribute significantly to the public understanding of executive branch operations and activities." Id. at 3–4.

Over the next several weeks, each of the DOJ components granted Protect Democracy's requests for expedited processing. See Pl.'s MPI, Exs. F & G; Defs.' Mem. Opp'n Pl.'s MPI ("Defs.' Opp'n"), Ex. 1. At the same time, the DOJ components had not conducted even a preliminary search for relevant documents, and they offered no estimated processing timeline. For example, OIP indicated that it had "not yet completed a search to determine whether there are records within the scope of [the] request," and that the "time needed to process [the] request [would] necessarily depend on the complexity of our records search and on the volume and complexity of any records located." Pl.'s MPI, Ex. F. DOD and State, on the other hand, denied the expedition requests, summarizing the relevant regulations but not explaining how Protect Democracy's request fell short of those standards. See MPI, Exs. I & J.

On May 8, roughly one month after submitting its requests, Protect Democracy brought suit in this Court, alleging FOIA violations. See Pl.'s Compl., ECF No. 1. Two weeks after that, before Defendants had responded to the Complaint, Protect Democracy moved for a preliminary injunction that would "compel all Defendants to process its FOIA requests on an expedited basis, and produce all requested records (or acknowledge if there are no such records)" within a date certain. Pls.' MPI 2. Defendants opposed the motion, and the Court held a hearing.

3

## II. Legal Standard

"A [party] seeking a preliminary injunction must establish [1] that he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in his favor, and [4] that an injunction is in the public interest." Aamer v. Obama, 742 F.3d 1023, 1038 (D.C. Cir. 2014) (alteration in original) (quoting Sherley v. Sebelius, 644 F.3d 388, 392 (D.C. Cir. 2011)). "[I]t is especially important for the movant to demonstrate a likelihood of success on the merits." Nat'l Head Start Ass'n v. U.S. Dep't of Health & Human Servs., 297 F. Supp. 2d 242, 246 (D.D.C. 2004) (citing Davenport v. Int'l Bhd. of Teamsters, 166 F.3d 356, 360, 366 (D.C. Cir. 1999)). A preliminary injunction is an "extraordinary" remedy, and so "should not be granted unless the movant, by a clear showing, carries the burden of persuasion." Mazurek v. Armstrong, 520 U.S. 968, 972 (1997) (per curiam) (emphasis in original) (quoting 11A C. Wright, A. Miller, & M. Kane, Federal Practice and Procedure § 2948 (2d ed. 1995)).

## III. Analysis

When brought under FOIA, preliminary injunction motions generally present one of two questions. First, has the relevant agency appropriately denied a request for expedited processing? See, e.g., Progress v. Consumer Fin. Prot. Bureau, No. 17-686, 2017 WL 1750263 (D.D.C. May 4, 2017); Wadelton v. Dep't of State, 941 F. Supp. 2d 120 (D.D.C. 2013); Landmark Legal Found. v. EPA, 910 F. Supp. 2d 270 (D.D.C. 2012). Second, assuming a request should be expedited, is the agency processing it as quickly as "practicable," 5 U.S.C. § 552(a)(6)(E)(iii)? See, e.g., Daily Caller v. U.S. Dep't of State, 152 F. Supp. 3d 1 (D.D.C. 2015); Elec. Privacy Info. Ctr. v. Dep't of Justice, 416 F. Supp. 2d 30 (D.D.C. 2006). Protect

Democracy's motion implicates both questions. The Court will evaluate each in turn, according to the four preliminary injunction factors.

  A. Whether Processing Should Be Expedited

   *1. Likelihood of Success on the Merits*

The Court first asks whether Protect Democracy is likely to succeed on the merits of its claim that its requests are entitled to expedited processing. Because the DOJ components have already granted Protect Democracy's expedition requests, only DOD's and State's denials remain relevant to this issue. A decision denying expedited processing is reviewed by the courts *de novo*, Al-Fayed v. CIA, 254 F.3d 300, 304 (D.C. Cir. 2001), "based on the record before the agency at the time of the determination," 5 U.S.C. § 552(a)(6)(E)(iii). Recall that, under FOIA, requests should be expedited where the requester shows a "compelling need" for the relevant information, 5 U.S.C. § 552(a)(6)(E)(i)(I), meaning that (1) the requester is "primarily engaged in disseminating information" and (2) there is an "urgency to inform the public concerning actual or alleged Federal Government activity," id. § 552(a)(6)(E)(v).

Consider first the requirement that a requester be "primarily engaged in disseminating information." As suggested by the statute's plain meaning and legislative history, the standard "requires that information dissemination be the main [and not merely an incidental] activity of the requestor." Progress, 2017 WL 1750263, at *3 (quoting Landmark Legal, 910 F. Supp. 2d at 276). On the other hand, publishing information "need not be [the organization's] sole occupation." Id. The Court easily finds that, with its representations to DOD and State, Protect Democracy satisfied these standards. The organization noted in both requests that it "intend[ed] to disseminate the information obtained"; that its "core mission . . . is to inform public understanding on operations and activities of government," including by "gather[ing] and

5

disseminat[ing] information that is likely to contribute significantly to the public understanding of executive branch operations and activities"; and that it "intend[ed] to give the public access to documents transmitted via FOIA on [its] website." Pl.'s MPI, Exs. D, E at 2–4. These representations likely established that Protect Democracy is "primarily engaged in disseminating information." 5 U.S.C. § 552(a)(6)(E)(v).

The Court turns next to whether Protect Democracy's request likely demonstrated an "urgency to inform the public concerning actual or alleged Federal Government activity." 5 U.S.C. § 552(a)(6)(E)(v). In evaluating whether this criterion has been satisfied, courts have been directed to weigh three main factors: "(1) whether the request concerns a matter of current exigency to the American public; (2) whether the consequences of delaying a response would compromise a significant recognized interest; and (3) whether the request concerns federal government activity." Al-Fayed, 254 F.3d at 310. The relevant agency regulations identify similar considerations. See 22 C.F.R. 171.11(b)(2) (State Regulation) ("urgently needed" information must have "a particular value that will be lost if not disseminated quickly"); 32 C.F.R. § 286.8(e)(3) (DOD Regulation) (requester "must establish a particular urgency to inform the public about the [relevant] government activity").

There is no dispute that Protect Democracy's requests relate to federal government activity. But do the requests touch on "a matter of current exigency to the American public," and would "delaying a response . . . compromise a significant recognized interest," Al-Fayed, 254 F.3d at 310? Likely, the answer to both questions is yes. Regarding nationwide "exigency": In its requests, submitted the day after the April 6 missile strikes against Syria, Protect Democracy explained that "the President's decision to initiate military action is of the utmost importance to the public," and that "whether the President has the legal authority to launch [such] a military

6

strike" is similarly critical. Pl.'s MPI, Exs. D, E at 2. Few would take issue with these assertions. But as evidence that they were justified, one need look no further than the widespread media attention—including by some of the nation's most prominent news outlets—paid both to the April 6 strike and its legality, as early as the date of Protect Democracy's requests.[1] Under the regulations promulgated by both DOD and State, such media coverage is strong evidence of an "urgency to inform" the public. See 32 C.F.R. § 286.8(e)(3) (DOD) ("The existence of numerous articles published on a given subject can be helpful in establishing the requirement that there be an 'urgency to inform' the public on the topic."); 22 C.F.R. § 171.11 (State) (defining "[u]rgently needed information" as being "[o]rdinarily" related to "a breaking news story of general public interest"). There is little doubt, in other words, that "the subject matter of the request[s] [is] central to a pressing issue of the day." Wadelton v. Dep't of State, 941 F. Supp. 2d 120, 123 (D.D.C. 2013).[2]

Relatedly, the Court also finds it likely that a significant delay in processing Protect Democracy's requests would "compromise a significant recognized interest." Al-Fayed, 254 F.3d at 310. In particular, if production is unduly delayed, both Protect Democracy and the

---

[1] See, e.g., Charlie Savage, *Was Trump's Syria Strike Illegal? Explaining Presidential War Powers*, N.Y. Times, Apr. 7, 2017, https://www.nytimes.com/2017/04/07/us/politics/military-force-presidential-power.html; Ryan Lizza, *Was Trump's Strike on Syria Legal?*, The New Yorker, Apr. 7, 2017, http://www.newyorker.com/news/ryan-lizza/was-trumps-strike-on-syria-legal; Ariane de Vogue, *Was Trump's Syria strike legal? An expert weighs in*, CNN Politics, Apr. 7, 2017, http://www.cnn.com/2017/04/07/politics/was-trump-syria-strike-legal/index.html; Sabrina Siddiqui & Lauren Gambino, *Are Donald Trump's Missile Strikes in Syria Legal?*, The Guardian, Apr. 7, 2017, https://www.theguardian.com/us-news/2017/apr/07/donald-trump-us-missile-strikes-syria-legal.

[2] Protect Democracy also cites "time-sensitive" Congressional debates over U.S. military actions in Syria. Pl.'s MPI 6, 21. However, as Defendants point out, see Defs.' Opp'n 12–13, none of those pending congressional resolutions specifically concerns the legality of the April 6 strikes against the Syrian government.

public at large will be "precluded . . . from obtaining in a timely fashion information vital to the current and ongoing debate surrounding the legality of" a high-profile government action, EPIC I, 416 F. Supp. 2d at 41—namely, military strikes against the Syrian government. Being closed off from such a debate is itself a harm in an open democracy. See Elec. Frontier Found. v. Office of Dir. of Nat. Intelligence, 2007 WL 4208311, at *7 (N.D. Cal. Nov. 27, 2007) ("[O]ngoing public and congressional debates about issues of vital national importance cannot be restarted or wound back.") (internal quotations omitted). But there is another potential harm, too: The possibility for the strikes to recur without legal justification. By then, any damage will have been done. See Payne Enterprises, Inc. v. United States, 837 F.2d 486, 494 (D.C. Cir. 1988) ("[S]tale information is of little value."). In short, because Protect Democracy has demonstrated a "compelling need" for the information it requested, the Court finds that the organization is likely to prevail on the merits of its expedited processing claim.

   2. *Irreparable Harm*

The Court turns to assessing Protect Democracy's expedition request in light of the remaining preliminary injunction factors, beginning with the likelihood of "irreparable harm in the absence of preliminary relief." Aamer, 742 F.3d at 1038. As may be apparent, in the course of evaluating whether "delaying a response would compromise a significant recognized interest," Al-Fayed, 254 F.3d at 310, the Court also found that harm would result from undue delay. But there is a key distinction between the analysis above and here. In assessing the merits of the agencies' denial decisions, the Court considered only information available to the agencies "at the time of the determination[s]." 5 U.S.C. § 552(a)(6)(E)(iii). The Court is not aware of any similar constraint, however, that applies in assessing irreparable harm or the other preliminary injunction factors. In other words, the Court may here consider events that have transpired since

8

Protect Democracy's April 7 requests.

Those intervening events have a common theme: increasing U.S. hostility towards the Syrian government. U.S.-led forces conducted strikes against pro-regime forces in Syria on May 18, June 6, and June 8,[3] and a U.S. fighter jet shot down a Syrian military jet on June 18.[4] As the Government points out, these military actions may not have been directly related to the April 6 strike, which was aimed at punishing the Syrian government for its suspected use of chemical weapons. See Defs.' Opp'n 13. But they nevertheless evidence mounting U.S. hostilities against pro-Syria forces. And on June 26, the White House indicated that another April 6-like attack may be imminent: It stated that Syria appeared to be readying for another chemical weapons attack, and "warned that [it] would 'pay a heavy price' if one took place."[5] At the same time, despite public requests from at least two members of Congress,[6] the Administration has not offered any detailed legal support for the April 6 strike.

The recent escalation in hostilities between U.S. and Syria, plus indications from the

---

[3] See CJTF-OIR, *Coalition Statement on At Tanf Garrison*, May 18, 2017, http://www.inherentresolve.mil/News/Article/1186578/coalition-statement-on-attanf-garrison; CJTF-OIR, *Coalition Statement on Actions Near At Tanf, Syria*, June 7, 2017, http://www.inherentresolve.mil/News/Article/1205543/coalitionstatement-%20on-actions-near-at-tanf-syria; CJTF-OIR, *Coalition Statement on At Tanf*, June 8, 2017, http://www.inherentresolve.mil/News/Article/1208008/coalition-statement-on-at-tanf.

[4] See Thomas Gibbons-Neff & Kareem Fahim, *U.S. Aircraft Shoots Down a Syrian Government Jet Over Northern Syria, Pentagon Says*, June 18, 2017, Wash. Post, https://www.washingtonpost.com/news/checkpoint/wp/2017/06/18/a-u-s-aircraft-has-shot-down-a-syrian-government-jet-over-northern-syria-pentagon-says/?utm_term=.1959576788de.

[5] Michael D. Shear, Helene Cooper & Eric Schmitt, *Syria Will 'Pay a Heavy Price' for Another Chemical Attack, White House Says*, N.Y. Times, June 26, 2017, https://www.nytimes.com/2017/06/26/us/politics/syria-will-pay-a-heavy-price-for-another-chemical-attack-trump-says.html.

[6] Jeremy Herb, *Kaine, Schiff Demand White House Legally Justify Syria Strike*, CNN Politics, Apr. 25, 2017, http://www.cnn.com/2017/04/25/politics/kaine-schiff-syria-strike/index.html.

White House that another chemical weapons attack may be in the offing, make it more likely that irreparable harm will result without expedited processing of Protect Democracy's requests. Again, the potential for irreparable harm under these circumstances exists "because ongoing public and congressional debates about issues of vital national importance cannot be restarted or wound back." Elec. Frontier Found., 2007 WL 4208311, at *7. That is especially so, here, where the use of military force is implicated. That fact distinguishes this case from those where the looming event is, for example, the promulgation of an administrative rule, see Landmark Legal Found. v. EPA, 910 F. Supp. 2d 270 (D.D.C. 2012), or even the passage of legislation, see Elec. Privacy Info. Ctr. v. DOJ, 15 F. Supp. 3d 32, 46 (D.D.C. 2014). Military strikes cannot be undone.

### 3. *Other Preliminary Injunction Factors*

In light of the Court's finding that Protect Democracy's requests likely warrant expedited processing, both "the balance of equities" and "the public interest," Aamer, 742 F.3d at 1038, counsel in favor of granting that relief. Defendants nowhere claim that it would overburden them merely to comply with FOIA's expedited processing requirements. Instead, they take issue with Protect Democracy's request for the production of documents by a date certain, which the Court addresses in the following section. Furthermore, it is clear that the public interest favors expediting Protect Democracy's requests, assuming those requests meet the relevant "compelling need" standards, 5 U.S.C. § 552(a)(6)(E)(v). Not only would the public benefit from participation in the "ongoing debate" discussed above, but an agency's compliance with a mandatory statutory regime is presumably always in the public interest. See Jacksonville Port Auth. v. Adams, 556 F.2d 52, 59 (D.C. Cir. 1977) ("[T]here is an overriding public interest . . . in the general importance of an agency's faithful adherence to its statutory mandate."). In sum, for

the reasons just outlined, Protect Democracy is entitled to a preliminary injunction directing the expedited processing of its requests.

B. Processing the Requests "As Soon As Practicable"

Protect Democracy has shown that it is entitled to expedited processing, but that is only half its battle. The organization also seeks an order directing that its requests be processed and responsive documents produced by a date certain. It must therefore carry its burden to show that the four preliminary injunction factors support awarding that relief, as well.

*1. Likelihood of Success on the Merits*

FOIA directs agencies to process expedited requests "as soon as practicable." 5 U.S.C. § 552(a)(6)(E)(iii). Protect Democracy argues that, because FOIA also requires agencies to make a "determination" within twenty days of receiving a typical, non-expedited request, see 5 U.S.C. 552(a)(6)(A)(i), an agency's "failure to respond [to an *expedited* request] in twenty working days creates a rebuttable presumption that the agency has not processed [that] request 'as soon as practicable.'" Pl.'s Reply 11; see also Pl.'s MPI 19–20. Protect Democracy misreads the applicable provision, however. The automatic "penalty" for failing to meet FOIA's twenty-day timeline is not the imposition of *another* explicit timeline, but rather "that the agency cannot rely on the administrative exhaustion requirement to keep cases from getting into court." Citizens for Responsibility & Ethics in Washington v. Fed. Election Comm'n, 711 F.3d 180, 189 (D.C. Cir. 2013). Once FOIA's deadlines have passed, "the agency may continue to process the request, and the court (if suit has been filed) will supervise the agency's ongoing progress, ensuring that the agency continues to exercise due diligence in processing the request." Id.; see also Daily Caller v. U.S. Dep't of State, 152 F. Supp. 3d 1, 10 (D.D.C. 2015) ("[The twenty-day] provision . . . serves primarily as a means to obtain immediate judicial supervision over an

11

agency's response to an outstanding FOIA request."). In cases where expedited processing has been granted, it follows that the district court's supervision will aim to ensure that the agency is processing a request with "due diligence" *and* as quickly "as practicable." 5 U.S.C. § 552(a)(6)(E)(iii). But there is no reason to assume that any request processed in less than twenty days has failed to meet that standard.[7] In light of Defendants' representations that they are actively processing Protect Democracy's requests, and without evidence to the contrary, the Court finds that the merits weigh in favor of Defendants on this issue.

### 2. *Irreparable Harm and Other Preliminary Injunction Factors*

The Court previously found that Protect Democracy had demonstrated a "compelling need" for the information it requested, and that the organization and the public would be irreparably harmed if the release of that information were unduly delayed. It cannot be said, however, that there will be irreparable harm if the requested information is not released within, say, twenty days. As Defendants note, Protect Democracy "has not identified a single imminent deadline" related to its request, or any event set to occur on a particular date. Defs.' Opp'n 13. And while U.S.-Syria tensions have been rising, there is no reason to expect further hostilities within any definite time window—for example, next week or next month. Accordingly, Protect Democracy has not demonstrated that it will experience irreparable harm without an order directing processing by a date certain.

Finally, "the balance of equities" and "the public interest," Aamer, 742 F.3d at 1038, previously on the side of Protect Democracy, here favor Defendants. Imposing on Defendants an

---

[7] Protect Democracy's "rebuttable presumption" argument rests on a single, non-precedential case. See EPIC I, 416 F. Supp. 2d 30. While the EPIC I court did initially apply a rebuttable presumption that processing had occurred less quickly than "practicable" based on FOIA's twenty-day timeline, id. at 39, it later reconsidered that order, and ultimately allowed the defendants up to 120 additional days. See Defs.' Opp'n, Ex. 5.

arbitrary deadline for processing would run the risk of overburdening them, and could even lead to the mistaken release of protected information. See Daily Caller, 152 F. Supp. 3d at 14 ("Requiring the agency to process and produce [requested] materials under an abbreviated deadline raises a significant risk of inadvertent disclosure of records properly subject to exemption under FOIA."). And requiring production by a date certain, without any factual basis for doing so, might actually *disrupt* FOIA's expedited processing regime rather than implement it. See Elec. Privacy Info. Ctr. v. DOJ, 15 F. Supp. 3d 32, 47 (D.D.C. 2014) ("[A]llowing [a plaintiff] to jump to the head of the line would upset the agency's processes and be detrimental to the other *expedited* requesters, some of whom may have even more pressing needs.") (emphasis added). In short, all four preliminary injunction factors counsel against requiring Defendants to process Protect Democracy's requests by a date certain, at least at this stage and on this record.

## IV. Conclusion

For the foregoing reasons, the Court will grant in part and deny in part Protect Democracy's motion for a preliminary injunction. As set forth in the accompanying Order, the Court will direct Defendants to process Protect Democracy's requests on an expedited basis, but will stop short, at this juncture at least, of ordering production by a date certain.

In accordance with its supervisory role, however, and in light of the fact that, as it represented at the hearing, Protect Democracy has offered to narrow its request to cover only documents specifically related to legal justifications for the April 6 Syria strikes, the Court will direct Defendants to file, by July 28, 2017, a status report on their ongoing search and processing efforts. That status report at a minimum should include the estimated number of documents responsive to Protect Democracy's requests, and a proposed processing and production timeline.

No later than August 2, 2017, Protect Democracy may file a response to Defendants' timeline, including its own proposal for processing and production. The Court will consider both proposals, and direct further proceedings as necessary.[8]

                                                       *Christopher R. Cooper*
                                                     CHRISTOPHER R. COOPER
                                                     United States District Judge

Date:   July 13, 2017

---

[8] As noted at the hearing, the Court also encourages the parties to work together to prioritize the processing of documents from particular components—such as the Office of Legal Counsel, State's Legal Advisor's Office, and the DOD General Counsel's offices—that are most likely to contain responsive and material records.