# EXHIBIT 1

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

THE PROTECT DEMOCRACY
PROJECT, INC.,

*Plaintiff*,

v.                                                             No. 17-cv-0842-CRC

U.S. DEPARTMENT OF DEFENSE, *et al.*,

*Defendants*.

### DECLARATION OF DANIEL R. CASTELLANO

I, Daniel R. Castellano, declare the following to be true and correct:

1.   I am Senior Attorney in the Office of Information Policy (OIP), United States

Department of Justice (DOJ).   In this capacity, I am responsible for supervising the handling of

the Freedom of Information Act (FOIA) requests processed by the Initial Request Staff (IR Staff)

of OIP that are subject to litigation.   The IR Staff of OIP is responsible for processing FOIA

requests seeking records from within OIP and from six senior leadership offices of the

Department of Justice, specifically the Offices of the Attorney General (OAG), Deputy Attorney

General (ODAG), Associate Attorney General (OASG), Legal Policy (OLP), Legislative Affairs

(OLA), and Public Affairs (PAO).   The IR Staff determines whether records responsive to

access requests exist and, if so, whether they can be released in accordance with the FOIA.   In

processing such requests, the IR Staff consults with personnel in the senior leadership offices

and, when appropriate, with other components within the Department of Justice, as well as with

other Executive Branch agencies.

1

2.   I make the statement herein on the basis of personal knowledge, including my review of the records discussed herein, as well as information provided to me by others within the Executive Branch of the Federal Government with knowledge of the records at issue in this case, and on information that I acquired while performing my official duties.

**OIP's Receipt and Processing of Plaintiff's FOIA Request**

3.   By letter submitted via facsimile, dated April 7, 2017, plaintiff submitted a FOIA request to OIP seeking: "Any and all records, including but not limited to emails and memoranda, reflecting, discussing, or otherwise relating to the April 6, 2017 military strike on Syria and/or the President's legal authority to launch such a strike"with a request timeframe of "April 4, 2017 through the present."

4.   Plaintiff requested expedited processing of their April 7, 2017 request pursuant to the Department's standard involving "[a] matter of widespread and exceptional media interest in which there exist possible questions about the government's integrity which affect public confidence."   See 28 C.F.R. § 16.5(e)(1)(iv).   Plaintiff also requested expedited processing pursuant to the Department's standard involving "[a]n urgency to inform the public about an actual or alleged Federal Government activity."   See id. § 16.5(e)(1)(ii).

5.   Plaintiff also requested a waiver of fees in their April 7, 2017 request.[1]

6.   As noted in paragraph 1 above, OIP processes FOIA requests on behalf of itself and six leadership offices of the DOJ.   OIP makes a determination upon receipt of a FOIA request as to the appropriate office or offices in which to conduct initial records searches.   In this instance, OIP determined, based upon a review of plaintiff's request, on its knowledge of the records

---

[1] No fees have been assessed for plaintiff's request.   Accordingly, plaintiff's request for a waiver of fees is moot.

maintained by the senior leadership offices, and on its knowledge of and research into the subject of the request, that OAG and ODAG were the most likely leadership offices to maintain the records sought by plaintiff in its April 7, 2017 request.

7.   By letter dated April 13, 2017, OIP acknowledged receipt of plaintiff's FOIA request, assigning it OIP tracking number DOJ-2017-003427 (AG), and informed plaintiff that OIP was searching for records responsive to plaintiff's request.   In this acknowledgment letter, OIP also notified plaintiff that its request for expedited processing had been granted.   OIP also informed plaintiff that the records sought required searches in other offices and their request therefore fell within "unusual circumstances" pursuant to 5 U.S.C. § 552 (a)(6)(B)(i)-(iii).   A copy of OIP's letter to plaintiff dated April 13, 2017 is attached hereto as Exhibit A.

8.   On May 8, 2017, plaintiff filed suit in connection with its April 7, 2017 request.   See Complaint, ECF No. 1.

9.   On May 22, 2017, plaintiff filed a motion for a preliminary injunction requesting, among other things, that OIP process its request and produce responsive documents by a date certain.   See ECF No. 3.

10. Subsequently, OIP through Department counsel, entered into negotiations with plaintiff to narrow the scope of its request to documents analyzing or explaining the President's legal authority to launch the April 6, 2017 Syria strike.   In this negotiation the parties agreed that OIP would exclude from processing all prior non-final versions of documents already being processed   in response to Plaintiff's FOIA requests or that have been publicly released, including correspondence discussing or transmitting those prior versions.   Where a document was never finalized, OIP agreed to process only the last-edited version of such document.

11.   By Order dated July 13, 2017, this Court denied Plaintiff's request for all responsive documents to be processed and produced by a date certain.   See ECF No. 15.

**<u>Description of OIP's Standard Search Methods</u>**

12.   As previously mentioned in paragraph 1 above, OIP processes FOIA requests on behalf of itself and six senior leadership offices of the Department of Justice.   OIP makes determinations upon receipt of a FOIA request, both as to the appropriate senior leadership office or offices in which to conduct initial records searches, and the records repositories and search methods to use in conducting records searches on behalf of the designated senior leadership offices.   Assessments of where responsive records are likely maintained are based on a review of the content of the request itself and the nature of the records sought therein, as well as our familiarity with the types and location of records that each senior leadership office maintains, discussions with knowledgeable personnel in the senior leadership offices, and any research that OIP staff may conduct on the topic of the request.

13.   In order to ensure that reasonably thorough records searches are conducted, during the course of processing a given FOIA request, OIP continually assesses whether other (both current and former) staff members' records should be searched, or whether supplemental or alternative search methods (such as targeted inquiries to knowledgeable leadership office staff regarding the existence of records not identified via "keyword" searches) should be used, and will initiate such additional searches as appropriate.   This assessment is based on OIP's review of records that are located in the initial records searches, discussions with Department personnel, or other pertinent factors.   In sum, OIP records searches are conducted in an agile and

comprehensive manner, and the various search steps undertaken by OIP staff in response to a given request work in tandem to achieve a complete records search.

14.   When searching the records of leadership office custodians identified as having potentially responsive material, OIP staff employ any one of a variety of search methods, or a combination of methods, depending on the factors at hand and on the type of records systems implicated in the search.   Potentially responsive records may be located in unclassified or classified e-mail systems, computer hard drives, and/or hard copy (paper) files.

<u>Unclassified E-mail Systems and Computer Hard Drives</u>

15.   Unclassified e-mail records (which today comprise the bulk of records identified in response to FOIA requests processed by OIP) and computer hard drives are searched using a sophisticated electronic system which remotely searches through a given custodian's entire e-mail collection and hard drive to isolate and locate potentially responsive records within that collection of electronic records, using search parameters that are provided by OIP staff.   This same system then serves as the review platform by which OIP staff review the records retrieved using those initial search parameters.   This platform allows broad search terms to be used initially and then for OIP staff to run more targeted, secondary searches within the gathered universe to identify records responsive to each request.   If and when secondary searches are conducted, the parameters used are based on a variety of factors, including keywords/search terms and contextual or background information provided in the request letter, topical research conducted on the request subject, discussions with knowledgeable officials within the Department, and on OIP's review of the initial search results which allows OIP to identify common terms and phrasing that is actually employed by records custodians on the topic of the

request.   This two-tiered search approach leverages the technological advancements of the electronic search and review system and, by enabling a broad initial search followed by a focused secondary search, allows OIP staff to conduct thorough, precise, and informed searches of unclassified e-mail systems.

<u>Departmental Executive Secretariat</u>

16.   The Departmental Executive Secretariat (DES) is the official records repository of OAG, ODAG, and OASG and maintains records of all formal, controlled, unclassified[2] correspondence sent to or from those Offices from January 1, 2001, to the present day. Moreover, the DES is used to track internal Department correspondence sent through formal channels, as well as certain external correspondence including Departmental correspondence with Congress.

17.   Records received by the designated senior leadership offices are entered into DES's Intranet Quorum (IQ) database by trained analysts.   The data elements entered into the system include such items as the date of the document, the date of receipt, the sender, the recipient, as well as a detailed description of the subject of the record.   In addition, entries are made that, among other things, reflect what action is to be taken on the records, which component has responsibility for that action, and when that action should be completed.   Keyword searches of the electronic IQ database may then be conducted by utilizing a single search parameter or combinations of search parameters.   Search parameters may include the subject, organization, date, name, or other keywords.

---

[2] The DES does not maintain classified information.

**Searches Conducted by OIP in Response to Plaintiff's Request**

18.   Upon review of plaintiff's request it was determined that potentially responsive records would most likely be located by the Offices of the Attorney General (OAG) and the Deputy Attorney General (ODAG) because the request sought records pertaining to the President's legal authority to launch the U.S. military strike against Syria on April 6, 2017.   In order to capture all potentially responsive records, OIP conducted broad searches of unclassified e-mail records and computer hard drives within OAG and ODAG, as well as the DES.

Search of OAG and ODAG E-Mail and Hard Drives

19. OIP initiated its search efforts on April 13, 2017.   Remote electronic searches of the email and computer files of all OAG and ODAG officials (twenty-eight custodians in total) were performed.    Moreover, consistent with the standard procedures as described in paragraph 13, OIP sent search notifications to OAG and ODAG which provided records custodians with the details of the request and instructions to identify any additional records, such as text and voice messages, or material maintained within a classified system, that would not be captured by OIP's remote search.   No such records (i.e., records not captured by OIP's remote search) were ultimately identified.

20. For both the OAG and ODAG offices the initial search parameters used were the date range of April 4, 2017 to April 13, 2017, and the terms "Syria" and "Shayrat."   As described previously, the initial search gathers a broad set of records from across the entire collection of e-mail and computer files for the relevant custodians.

7

21.   The OIP attorney assigned to the case individually reviewed the documents identified in the searches of the twenty-eight custodians and determined that seventy-two pages of records were responsive to plaintiff's narrowed request.

Search of the Departmental Executive Secretariat

22.   In addition to the OAG and ODAG searches described above, an OIP Government Information Specialist (GIS) conducted a search for records responsive to plaintiff's FOIA request in the electronic database of the DES which, as described in paragraphs 16 and 17 above, is the official records repository of all formal correspondence of OAG and ODAG.   OIP's search of the DES was conducted using the same terms as the broad search in the unclassified e-mail platform, i.e.: "Syria" and "Shayrat."   The timeframe was limited to April 4, 2017 to April 13, 2017, consistent with the plaintiff's initial request.

23.   No records responsive to plaintiff's request were located through OIP's search of the DES.

Additional Steps Taken To Assess Existence of Potentially Responsive Records

24.   As mentioned above in paragraph 13, OIP continually assesses whether other records systems or search methods should be used, and in this instance there was no indication after the initial review of documents was complete and the scope of the search was narrowed that responsive records might also be located on classified systems or in other DOJ components.

**Summary and Adequacy of OIP's Records Searches**

25.   In sum, OIP conducted a search for documents from April 4, 2017 to April 13, 2017, analyzing or explaining the President's legal authority to launch the April 6, 2017 Syria strike. The scope of that search included, as appropriate, searches of the unclassified e-mail and hard

drives of twenty-eight identified officials, as well as the electronic database of the DES, to locate records responsive to plaintiff's narrowed request.   Based on my experience with the Department, my familiarity with the records maintained by the leadership offices, discussions with knowledgeable staff, as well as my understanding of the scope of plaintiff's request, and information gathered from the documents themselves, I aver that OIP's searches were reasonably calculated to uncover all potentially responsive records and that all files likely to contain relevant documents were searched.

### OIP's Interim and Final Responses to Plaintiff's FOIA Request

26.   As a result of OIP's searches, OIP identified seventy-two pages containing material responsive to plaintiff's narrowed FOIA request.   By letter dated August 18, 2017, OIP provided an interim response to plaintiff informing it that OIP was withholding two pages in full pursuant to Exemption 5 of the FOIA, 5 U.S.C.§ 552(b)(5).   OIP further informed plaintiff that it was continuing to process records responsive to plaintiff's narrowed request and would respond to plaintiff on or before September 8, 2017.   A copy of OIP's first interim response dated August 18, 2017 is attached hereto as Exhibit B.

27. By letter dated September 8, 2017, OIP provided a final response to plaintiff and informed it that OIP's review of the remaining material was complete.   OIP determined that fifty-three pages were appropriate for release in full, seven pages were appropriate for release with excisions, and ten pages must be withheld in full.   The redactions and withholdings were made pursuant to Exemptions 5, 6, and 7(C) of the FOIA, 5 U.S.C.§ 552(b)(5), (b)(6), and (b)(7)(C).   A copy of OIP's final response dated September 8, 2017 is attached hereto as Exhibit C.

<u>NSD Referral to OIP</u>

28.   The National Security Division (NSD) referred sixty-six pages of e-mail records to OIP for processing and direct response to the requester.

29.   Upon review of the records referred by NSD, OIP determined that all sixty-six pages were entirely duplicative of documents already located by OIP and notified plaintiff of this fact in the September 8, 2017 response.

**Explanation of Withheld Material**

30.   As stated above, of the sixty pages OIP provided to plaintiff, fifty-three were released in full and seven pages were released in part, with redactions made pursuant to Exemptions 5, 6, and 7(C) of the FOIA.   In addition, twelve pages were withheld in full pursuant to Exemptions 5, 6, and 7(C) of the FOIA.   All reasonably segregable, nonexempt information from these records were disclosed to plaintiff.

31.   Attached to Defendants' motion for summary judgment as Exhibit 1 is a *Vaughn* Index containing detailed descriptions of partially withheld records and records withheld in full. This *Vaughn* Index includes the following information for each document withheld in part and in full:   Document Number; Document ID Number (for documents released in part, this number corresponds to Bates stamps on documents released to plaintiff); Document Date; From; To; Subject, Title or Document Type; Exemption(s); and Description of Withheld Material.

<u>Exemption 5</u>

32.   Exemption 5 of the FOIA exempts from mandatory disclosure "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency."   5 U.S.C. § 552(b)(5).   As discussed in detail below, the

documents protected by OIP in part or in full pursuant to FOIA Exemption 5 fall squarely within the deliberative process privilege, which will be discussed below.

### i.   Exemption 5: Inter-/Intra-Agency Threshold

33.   The information withheld from plaintiff pursuant to this exemption consists of communications generated by and wholly internal to the Executive Branch.    As such, they are "inter-/intra-agency" documents within the threshold of FOIA Exemption 5.

### ii. Exemption 5: Deliberative Process Privilege

34.   OIP has protected information pursuant to the deliberative process privilege.    All of the documents are either word or PDF documents or e-mail communications.

35. Inter- and intra-agency e-mails and word or PDF documents, such as those withheld in this case by OIP, frequently include preliminary assessments by attorneys and other staff about issues on which they have been asked to make recommendations, develop provisional guidance and give advice.   Department officials routinely e-mail each other as they develop provisional guidance on how to respond to inquiries or statements regarding the Department's activities – as in the protected portions of the documents "UPDATED NSC SYRIA GUIDANCE AS OF 04/07/2017 10:46AM," "NSC SYRIA Update and Reaction Compilation 4/7/2017 10:46AM," "Re: Additional Updated NSC Guidance," identified in the *Vaughn* Index (Doc. Nos. 11, 12, and 13, DOC IDs OIP 0.7.12484.5041, OIP 0.7.12484.5043, and OIP 0.7.12484.5047 ). Department staff also use word or PDF documents to brief senior officials on a variety of pending matters and in preparation for responding to inquiries and/or engaging with the press – as in the "NSC Syria Strike Guidance Compilation" and "Press Guidance" documents identified

in the *Vaughn* Index (Doc. Nos. 7 and 8, DOC ID OIP 0.7.12484.5164-000001 and OIP 0.7.12484.5431-000001).   In all of these instances, the protected (in part or in full) e-mail exchanges and word or PDF documents reflect staff members' developing, preliminary assessments about matters on which no final decision has yet been made. Indeed, all of the e-mails and word or PDF documents protected by OIP pursuant to the deliberative process privilege reflect this preliminary give-and-take of agency deliberations.

36. The deliberative process privilege is intended to protect the decision-making processes of government agencies from public scrutiny in order to enhance the quality of agency decisions.   Disclosure of the e-mails and word or PDF documents attached to the emails at issue would severely hamper the efficient day-to-day workings of the Department as individuals would no longer feel free to discuss their ideas, strategies, and advice in e-mail messages and Department employees will be much more circumspect in their discussions with each other. This lack of candor will seriously impair the Department's ability to foster the forthright internal discussions necessary for efficient and proper decision-making.   Certainly, disclosure of such preliminary assessments and opinions would make officials contributing to pre-decisional deliberations much more circumspect in providing their views.   Agency decision-making is at its best when employees are able to focus on the substance of their views and not on whether their views may at some point be made publicly available.

37. Another aspect of the decision-making process consists of the drafting of press guidance, to aid senior leadership officials and prepare them to address various legal and policy questions that may arise.   The document titled "Press Guidance" in the *Vaughn* Index (Doc. No. 9, Doc ID OIP 0.7.12484.5164-000001) was prepared in order to brief Executive Branch

12

officials in advance of any press conference or other public statement.   Such briefing materials are therefore pre-decisional, inasmuch as they precede the event the Executive Branch officials are being prepared for and do not embody final agency action.   In fact, the press guidance located by OIP is a prior version of press guidance located by other defendant-agencies in this matter, further supporting the deliberative nature of the document.

38.   The press guidance summarizes particular events, identifies important issues, and provides key background information in a concise, summary format for ease of understanding and presentation, as well as provides a hypothetical question and proposed answer.   Throughout this process, the authors necessarily review the universe of facts and possible issues arising on the topic at hand, and then select those facts and issues that they deem most appropriate for briefing.   The decision to include or exclude certain factual information in or from analytical documents is itself an important part of the deliberative process.   The Department's most senior officials rely heavily on the creation of such press guidance so that they can be fully informed on the substance of the daily legal and policy issues being worked on in the Department.

39.   Press guidance also reflects the drafters' opinions and analysis on important, newsworthy topics and on how best to convey and respond to questions on these topics from the Department's perspective.   Revealing such opinions and analysis would hinder the ability to provide candid evaluations on the topics of the day for Department leadership and by extension, Department leadership's ability to prepare for press events and to provide informed and accurate representation of the Department's interests.   Because the selection of facts and source material is itself a part of the deliberative process inherent to the preparation of briefing materials, these documents are deliberative.

40. The document in the *Vaughn* Index with the subject of "NSC Syria Strike Guidance Compilation" (Doc. No. 9, Doc IDs OIP 0.7.12484.5431-000001) consists of advice provided to senior Executive Branch officials regarding proposed talking points, including both broad issues to emphasize when publicly discussing the April 6, 2017 U.S. military strike on Al Shayrat airfield in Syria and recommendations for the specific points that should be illuminated in any such discussion.

41. All of the withheld information is predecisional in the "NSC Syria Strike Guidance Compilation" (Doc. No. 9, Doc IDs OIP 0.7.12484.5431-000001), as the Department had not yet determined its response.   It is deliberative because it reflects advice on where to focus discussion.   Disclosure of this information could reasonably be expected to seriously inhibit the candor and effectiveness of the advisers engaged in this deliberative process.   The withheld information also consists of proposed press guidance, as discussed above in paragraphs 37-39, prepared for use by Executive Branch officials in addressing inquiries regarding the legal basis for the April 6, 2017 U.S. military strike against the Al Shayrat airfield in Syria, including a hypothetical question and proposed answer.   The information is pre-decisional and deliberative, as it reflects the recommendations and advice of Executive Branch employees with respect to a decision on press strategy and communications to the press that had not yet been made. Disclosure of the information reasonably could be expected to chill the open and frank expression of ideas, recommendations, and opinions that occur when Executive Branch officials develop press guidance on a sensitive matter.

42. The emails identified in the *Vaughn* Index with the subjects of "UPDATED NSC SYRIA GUIDANCE AS OF 04/07/2017 10:46AM," "NSC SYRIA Update and Reaction

14

Compilation 4/7/2017 10:46AM," and "Re: Additional Updated NSC Guidance," (Doc. Nos 11,

12, and 13, DOC IDs OIP 0.7.12484.5041, OIP 0.7.12484.5043, and OIP 0.7.12484.5047 ) are

all internal email communications disseminating similar information and are protected under the

deliberative process priviledge as discussed above in paragraphs 37-41.

*iii. Segregation of Non-Exempt Information*

43.   OIP carefully reviewed each of the documents discussed above, and withheld from

release pursuant to the deliberative process privilege of Exemption 5 only that information which

would reveal the pre-decisional decision-making process of the Department and other executive

branch agencies.   OIP conducted a line-by-line review of these documents and determined that

some non-exempt information in the emails and Guidance Compilation could be segregated for

release.   However, all of the information contained in the Press Guidance document was

withheld from plaintiff because that information was protected by the deliberative process

privilege.   Releasing any part of this document reveals facts that are deemed important in

preparing the Department's senior leadership and other executive branch officials for press

questions; and therefore, it was withheld in full.   Accordingly, all reasonably segregable, non-

exempt information has been disclosed to plaintiff.

<u>Exemption 6 and 7</u>

44.   FOIA Exemption 6 protects information about individuals when the disclosure of

such information "would constitute a clearly unwarranted invasion of personal privacy."

5 U.S.C. § 552(b)(6).   FOIA Exemption 7(C) protects information "compiled for law

enforcement purposes" and protects personal privacy when disclosure "could reasonably be

expected to constitute an unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(7)(C).

Department of Justice counsel has advised me that, pursuant to discussions between counsel for the parties, plaintiff advised that it would not challenge any of the Exemption 6 and 7(C) withholdings made pursuant to the September 8, 2017, response described above.    As such, the Exemption 6 and 7(C) redactions are not addressed further herein.

      I declare under penalty of perjury that the foregoing is true and correct.

Daniel R. Castellano
Senior Attorney

Executed this 3rd day of November 2017.

16

# Exhibit A



**U.S. Department of Justice**

Office of Information Policy
*Suite 11050*
*1425 New York Avenue, NW*
*Washington, DC  20530-0001*

*Telephone: (202) 514-3642*

April 13, 2017

Mr. Ian Bassin
The Protect Democracy Project
P.O. Box 170521
Brooklyn, NY  10004                        Re:    DOJ-2017-003427 (AG)
FOIA@protectdemocracy.org                          VRB:DRH:ERH

Dear Mr. Bassin:

        This is to acknowledge receipt of your letter dated and received in this Office on
April 7, 2017, in which you requested records pertaining to the U.S. military strike against
Syria on April 6, 2017, and/or the President's legal authority to launch that strike.  This
response is made on behalf of the Office of the Attorney General.

        You have requested expedited processing of your request.  I have determined that your
request for expedited processing should be granted.  Accordingly, your request has been
assigned to a Government Information Specialist in this Office and a record search has been
initiated in the Office of the Attorney General.

        Although your request has been granted expedited processing, we are required to advise
you that the records you seek require a search in another Office, and so your request falls
within "unusual circumstances."  See 5 U.S.C. 552 § (a)(6)(B)(i)-(iii).  Accordingly, we have
not yet completed a search to determine whether there are records within the scope of your
request.  The time needed to process your request will necessarily depend on the complexity of
our records search and on the volume and complexity of any records located.  Your request has
been assigned to the expedited track, and will be processed as soon as practicable.

        We have not yet made a decision on your request for a fee waiver.  We will do so after
we determine whether fees will be assessed for this request.

        If you have any questions or wish to discuss the processing of your request, you may
contact me by telephone at the above number or you may write to me at Office of Information
Policy, United States Department of Justice, Suite 11050, 1425 New York Avenue, NW,
Washington, DC 20530-0001.  Lastly, you may contact our FOIA Public Liaison at the above
telephone number to have any concerns you may have addressed.

                                        Sincerely,

                                        Vanessa R. Brinkmann
                                        Senior Counsel

# Exhibit B



**U.S. Department of Justice**

Office of Information Policy

*Suite 11050*
*1425 New York Avenue, NW*
*Washington, DC 20530-0001*

*Telephone: (202) 514-3642*

August 18, 2017

Mr. Ian Bassin                                         Re:   DOJ-2017-003427 (AG)
The Protect Democracy Project                                 DOJ-2017-004544 (DAG)
P.O. Box 170521                                               No.1:17-cv-00842 (D.D.C.)
Brooklyn, NY 10004                                            DRC:JRS
FOIA@protectdemocracy.org

Dear Mr. Bassin:

This is an interim response to your Freedom of Information Act (FOIA) request, dated and received in this Office on April 7, 2017 seeking records pertaining to the President's legal authority to launch the U.S. military strike against Syria on April 6, 2017. This response is made on behalf of the Offices of the Attorney General and Deputy Attorney General.

Please be advised that searches have been conducted in the Offices of the Attorney General and Deputy Attorney General. As a result of these searches, records responsive to your request have been located. At this time, I have determined that two pages should be withheld in full pursuant to Exemption 5 of the FOIA. Exemption 5 pertains to certain inter- and intra-agency communications protected by the deliberative process privilege. Pursuant to the Joint Status Report filed on July 28, 2017 (*See* ECF, No. 17), we are continuing to process the remaining material, and will respond to you again by September 8, 2017.

For your information, Congress excluded three discrete categories of law enforcement and national security records from the requirements of the FOIA. *See* 5 U.S.C. § 552(c) (2015) (amended 2016). This response is limited to those records that are subject to the requirements of the FOIA. This is a standard notification that is given to all our requesters and should not be taken as an indication that excluded records do, or do not, exist.

If you have any questions regarding this response, please contact Kathryn Davis of the Department's Civil Division, Federal Programs Branch, at (202) 616-8298.

Sincerely,

*Daniel Castellano*

Daniel R. Castellano
Senior Attorney

Exhibit C



**U.S. Department of Justice**

Office of Information Policy

*Suite 11050*
*1425 New York Avenue, NW*
*Washington, DC  20530-0001*

*Telephone: (202) 514-3642*

September 8, 2017

Mr. Ian Bassin                                      Re:     DOJ-2017-003427 (AG)
The Protect Democracy Project                               DOJ-2017-004544 (DAG)
P.O. Box 170521                                             No.1:17-cv-00842 (D.D.C.)
Brooklyn, NY 10004                                          DRC:JRS
FOIA@protectdemocracy.org

Dear Mr. Bassin:

　　　This is our final response to your Freedom of Information Act (FOIA) request, dated and received in this Office on April 7, 2017 seeking records pertaining to the President's legal authority to launch the U.S. military strike against Syria on April 6, 2017.  This response is made on behalf of the Offices of the Attorney General (OAG) and Deputy Attorney General (ODAG).

　　　By letter dated August 18, 2017, we provided you with an interim response regarding certain material responsive to your request, and advised you that we would respond to you again on the remaining material on behalf of OAG and ODAG.  Please be advised that our review of the remaining material responsive your request is now complete and that seventy additional pages responsive to your request were located.  I have determined that fifty-three pages are appropriate for release without excision, seven pages are appropriate for release with excisions, and ten pages must be withheld in full.  A copy of these records are enclosed.  The excisions are made pursuant to Exemptions 5, 6, and 7(C) of the FOIA, 5 U.S.C.§ 552(b)(5), (b)(6), and (b)(7)(C).  The ten pages are being withheld in full pursuant to Exemption 5.  Exemption 5 pertains to certain inter- and intra-agency communications protected by the deliberative process privilege.  Exemption 6 pertains to information the release of which would constitute a clearly unwarranted invasion of the personal privacy of third parties.  Information has also been withheld on behalf of the National Security Division (NSD) pursuant to FOIA Exemption 7(C), which pertains to records or information compiled for law enforcement purposes, the release of which could reasonably be expected to constitute an unwarranted invasion the personal privacy of third parties.

　　　Please note that NSD referred sixty-six pages to OIP for our processing; however, these sixty-six pages are entirely duplicative of the above mentioned material.

　　　For your information, Congress excluded three discrete categories of law enforcement and national security records from the requirements of the FOIA.  *See* 5 U.S.C. § 552(c) (2015) (amended 2016).  This response is limited to those records that are subject to the requirements of the FOIA.  This is a standard notification that is given to all our requesters and should not be taken as an indication that excluded records do, or do not, exist.

2

If you have any questions regarding this response, please contact Kathryn Davis of the Department's Civil Division, Federal Programs Branch, at (202) 616-8298.

Sincerely,

Daniel R. Castellano
Senior Attorney

Enclosures