# EXHIBIT 2

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

THE PROTECT DEMOCRACY
PROJECT, INC.,

*Plaintiff,*

v.                                                      No. 17-cv-0842-CRC

U.S. DEPARTMENT OF DEFENSE, *et al.*,

*Defendants.*

## DECLARATION OF PAUL P. COLBORN

I, Paul P. Colborn, declare as follows:

1.        I am a Special Counsel in the Office of Legal Counsel ("OLC") of the United

States Department of Justice (the "Department") and a career member of the Senior Executive

Service.  I joined OLC in 1986, and since 1987 I have had the responsibility, among other things,

of supervising OLC's responses to requests it receives under the Freedom of Information Act

("FOIA"), 5 U.S.C. § 552.  I submit this declaration in support of the Department's Motion for

Summary Judgment in this case.  The statements that follow are based on my personal

knowledge, as well as on information provided to me by OLC attorneys and staff working under

my direction, and by others with knowledge of the documents at issue in this case.

## OLC'S RESPONSIBILITIES

2.        The principal function of OLC is to assist the Attorney General in his role as legal

adviser to the President of the United States and to departments and agencies of the Executive

Branch.  OLC provides advice and prepares opinions addressing a wide range of legal questions

involving the operations of the Executive Branch.  OLC does not purport to make policy

decisions, and in fact lacks authority to make such decisions. OLC's legal advice and analysis may inform the decisionmaking of executive branch officials on matters of policy, but OLC's legal advice is not itself dispositive as to any policy adopted.

3.      Although OLC publishes some opinions and makes discretionary releases of others, OLC legal advice in all its forms is generally kept confidential. The President and other Executive Branch officials (like other public- and private-sector clients) often depend upon the confidentiality of legal advice in order to fulfill their duties effectively. One important reason OLC legal advice often needs to stay confidential is that it is part of a larger deliberative process—a process that itself requires confidentiality to be effective. If government agencies and OLC had to conduct deliberations with knowledge that their deliberations were open to public view, such discussions would naturally be chilled or inhibited, and the efficiency of government policy making would suffer as a result.

4.      These deliberative confidentiality concerns apply with particular force to OLC advice because of OLC's role in the decisionmaking process: OLC is often asked to provide advice and analysis with respect to very difficult and unsettled issues of law. Frequently, such issues arise in connection with highly complex and sensitive activities of the Executive Branch on matters that can be quite controversial. So that executive branch officials may continue to request, receive, and rely on candid legal advice from OLC on such sensitive matters, it is essential that OLC legal advice provided in the context of internal deliberations—and executive branch officials' willingness to seek such advice—not be inhibited by concerns about public disclosure.

5.      The foregoing considerations regarding the need for confidential executive branch deliberations are particularly compelling in the context of the provision of legal advice, given the

nature of the attorney-client relationship. There is a special relationship of trust between a client and an attorney when the one seeks and the other provides independent legal advice. When the advice is provided in confidence, it is protected from compelled disclosure. As the Supreme Court has observed, "[t]he attorney-client privilege is the oldest of the privileges for confidential communications known to the common law. Its purpose is to encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice." *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981). It is critical to protect this relationship of trust in the governmental context, to ensure such full and frank communication between governmental attorneys and their clients, and thereby promote such broader public interests in the government's observance of law and the administration of justice. The free and candid flow of information between agency decisionmakers and their outside legal advisers depends on the decisionmakers' confidence that the advice they receive will remain confidential. Moreover, disclosure of legal advice may often reveal confidential communications from agency clients made for the purposes of securing advice.

6.      When asked to provide counsel on the law, OLC attorneys stand in a special relationship of trust with their agency clients. Just as disclosure of client confidences in the course of seeking legal advice would seriously disrupt the relationship of trust so critical when attorneys formulate legal advice to their clients, disclosure of the advice itself would be equally disruptive to that trust. Thus, the need to protect the relationship of trust between OLC and the client seeking its legal advice provides an additional reason OLC legal advice often needs to stay confidential.

7.     When OLC's client is the President or his senior advisers, OLC's advice also requires confidentiality for a third reason:  its disclosure would inhibit the President's ability to engage in effective communications and decisionmaking.  In order to discharge his duties under Article II of the Constitution, the President must be able to receive confidential advice of all kinds, including legal advice.  For this reason, OLC legal advice to the President or his senior advisers is also generally protected by the presidential communications privilege.

8.     The interests protected by the deliberative process, attorney-client, and presidential communications privileges continue to apply fully to confidential OLC legal advice in circumstances where the Executive Branch or one of its departments or agencies elects, in the interest of transparency, to explain publicly the Executive Branch's understanding of the legal basis for current or contemplated executive branch conduct.  There is a fundamental distinction between an explanation of the rationale and basis for a decision, which would not be privileged, and legal advice received prior to making a decision, which is privileged.  Thus, there is no disclosure of privileged legal advice, and therefore no waiver of attorney-client privilege, when, as part of explaining the rationale for its actions or policies, the Executive Branch explains its understanding of their legal basis without reference to any confidential legal advice that executive branch decisionmakers may have received before deciding to take the action or adopt the policy.  If merely explaining publicly the legal basis for executive branch conduct were understood to remove the protection of the attorney-client privilege from the confidential legal advice provided as part of the Executive Branch's internal deliberations, it would substantially harm the ability of executive branch decisionmakers to request, receive, and rely upon full and frank legal advice from government lawyers as part of the decisionmaking process, and it would

also harm the public by discouraging the Executive Branch from explaining its understanding of the legal basis for its actions publicly in the future.

## PLAINTIFF'S FOIA REQUEST

9.      On April 7, 2017, OLC received a request from Ian Bassin on behalf of plaintiff Protect Democracy Project, requesting "Any and all records, including but not limited to emails and memoranda, reflecting, discussing, or otherwise relating to the April 6, 2017 military strike on Syria and/or the President's legal authority to launch such a strike." See Ex. A, at 1 (FOIA Request (Apr. 7, 2017) (hereinafter, "the FOIA Request")).  The FOIA Request sought records from "April 4, 2017 through the present." *Id.*  Plaintiff requested expedited processing of its request. *Id.*

10.     By letter dated April 26, 2017, I responded to Mr. Bassin on behalf of OLC, acknowledging receipt of the FOIA Request and informing him that his request for expedited processing had been granted.  *See* Ex. B, at 1 (OLC Acknowledgment (Apr. 26, 2017)).

11.     Following the commencement of this litigation and negotiations through counsel narrowing the scope of the request, by letter dated August 18, 2017, I partially responded to plaintiff's FOIA Request regarding the documents "most relevant" to the FOIA Request. *See* Ex. C, at 1 (OLC First Response (Aug. 18, 2017)).  I informed him that a search of OLC's records had identified three records responsive to the request, as narrowed. *Id.* I also informed him that one document had been referred to the Office of Information Policy, which had located the same record, and that OLC was withholding the remaining two records in full, one pursuant to Exemptions One and Five, and the other pursuant to Exemption Five. *Id.* I further informed Mr. Bassin that the first withheld document was properly classified and protected by the deliberative process, attorney-client, and presidential communications privilege, and that the

second was protected by the deliberative process and attorney-client privileges. *Id.* Finally, I informed Mr. Bassin none of the records was appropriate for discretionary release. *Id.*

12.     By letter dated September 8, 2017, I provided a final response to the FOIA request. *See* Ex. D, at 1 (OLC Final Response (Sept. 8, 2017)).  I informed him that the search for records in OLC's possession that were responsive to the narrowed FOIA Request had been completed, and that OLC had not located "any additional non-duplicative records that were not already being processed by another recipient of the request." *Id.*

## OLC'S SEARCH

13.     OLC is a very small component of the Department of Justice, employing approximately twenty to twenty-five attorneys at any one time.  After consulting OLC attorneys likely to be familiar with the assignment of OLC attorneys on national security matters, OLC identified four attorneys—two senior attorneys and two line attorneys—as individual custodians who might potentially have records responsive to the FOIA Request.  At the time of the search, one of the line attorneys had left OLC, but the other three custodians remained current employees.

14.     In consultation with each current custodian, OLC's FOIA Attorney determined that potentially responsive records, if any, would be located in either the classified or unclassified email accounts or electronic file storage of the four custodians.

15.     Department IT staff responsible for classified email systems ran keyword searches against the four custodians' classified email accounts and electronic files over the relevant time period and provided the FOIA Attorney and OLC's lead paralegal with access to the results.[1] One custodian was asked to search an unclassified email account for the same information, and

---

[1] The keywords for this search included "Syria," "Shayrat," "Shaykuhn," and "Sheikhoun."

6

provide the results to the FOIA Attorney.  Separately, the custodians were asked if they had or were aware of any records that could be responsive and would not be captured by either of these searches.  As a check against the quality of the search, OLC's FOIA Attorney also consulted with the other agency defendants in this action to determine whether they were aware of OLC equities in any other documents not located in OLC's search.

16.     All of the potentially responsive documents identified by OLC's search were reviewed by OLC's FOIA attorney to determine whether they were responsive to the FOIA Request, as narrowed, and to evaluate the application of any FOIA exemptions to the documents.

## DOCUMENTS AT ISSUE

17.     I am personally familiar with the withheld documents at issue in this case.

18.     The first withheld document (Doc. 2, OLC 1) is a classified legal advice document prepared by an interagency group of attorneys—including OLC attorneys—for the purpose of providing advice and recommendations to the President and/or other senior Executive Branch officials regarding the legal basis for potential military action.  The document contains confidential client communications made for the purpose of seeking legal advice and predecisional legal advice from OLC attorneys and other government attorneys transmitted to senior advisers to the President as part of governmental deliberative processes in connection with Presidential decisionmaking.

19.     The second withheld document (Doc. 4, OLC 2) is an unclassified outline, prepared by OLC attorneys for the purpose of advising the Attorney General regarding the legal basis for the April 6, 2017 U.S. military strike against the Al Shayrat airfield in Syria. The outline was used by the Acting Assistant Attorney General ("AAG") in charge of OLC to assist him in providing oral legal advice to the Attorney General.  The document is accordingly

predecisional and deliberative as to what the Acting AAG would choose to say in that briefing. Moreover, as is generally the case with OLC legal advice, the document contains confidential client communications made for the purpose of seeking legal advice and predecisional legal advice from OLC attorneys transmitted to a senior decisionmaker as part of governmental deliberative processes.

## APPLICABLE PRIVILEGES

### *Withholding Pursuant to Exemption Five*

20.      FOIA's Exemption Five exempts from mandatory disclosure "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency." 5 U.S.C. § 552(b)(5).  Exemption Five incorporates the traditional privileges that the government may assert in civil litigation against a private litigant and exempts from FOIA's reach documents covered by such privileges.  Exemption Five applies to OLC 1 because it is protected by the deliberative process, attorney-client, and presidential communications privileges, and to OLC 2 because it is protected by the deliberative process and attorney-client privileges.

21.      OLC 1 is protected by the deliberative process privilege because the document is pre-decisional and provided legal advice as part of a presidential deliberative process. The document is pre-decisional because it was prepared for the consideration of the President's national security advisers to aid the President in deciding whether to authorize a contemplated military action.  The document is deliberative because it contained legal advice from OLC and other government attorneys to the National Security Council ("NSC") Legal Adviser for use in the deliberations over whether to advise the President to authorize the action and because it reflects the give-and-take and candor of an Executive Branch deliberative process.  The limited

factual material contained in the document is closely intertwined with the advice and analysis that the Memorandum conveys. Compelled disclosure of the Memorandum would undermine the deliberative processes of the Executive Branch—in this case, of the President and his advisers at the NSC. Attorneys at OLC are often asked to provide advice and analysis with respect to very difficult and unsettled questions of law, and on matters that can be quite controversial. It is essential to the President in carrying out his mission and to the proper functioning of the Executive Branch overall that OLC's legal advice not be inhibited by concerns about the risk of public disclosure. Protecting the confidentiality of OLC's legal advice provided in the context of presidential (or other Executive Branch) deliberations is essential both to ensure that creative and sometimes controversial legal arguments and theories may be examined candidly, effectively, and in writing, and to ensure that the President, his advisers, and other Executive Branch officials continue to request and rely on frank legal advice from OLC and other government attorneys on sensitive matters.

22.     The attorney-client privilege also applies to OLC 1. The document was authored by an interagency group of lawyers, coordinated by lawyers on the staff of the NSC, for use by the President's National Security Adviser in advising the President and the National Security Council. The limited factual material contained in the document was provided to OLC and the other attorneys by the NSC staff for purposes of obtaining confidential legal advice. Having been asked to provide legal advice, OLC attorneys stood in a special relationship of trust with the President and his advisers. Just as disclosure of client confidences in the course of seeking legal advice would seriously disrupt the relationship of trust so critical when attorneys formulate legal advice to their clients, so too would disclosure of the legal advice itself undermine that trust.

23.     Finally, because OLC 1 was communicated to the NSC Legal Adviser, it is also subject to the presidential communications privilege.  That privilege protects confidential communications that relate to possible presidential decisionmaking and that involve the President or his senior advisers.  This privilege preserves the President's ability to obtain frank and informed opinions from his advisers and to make decisions in confidence.  It is not limited to exchanges directly involving the President, but also protects communications between presidential advisers made in the course of formulating advice or recommendations for the President.  The privilege protects such communications in order to ensure that the President's advisers may fully explore options and provide appropriate advice to the President without concerns about compelled disclosure.  OLC 1 provided legal advice to one of the President's senior advisers, the NSC Legal Adviser, regarding the President's authority to authorize a particular military action. Accordingly, it is protected by the presidential communications privilege.  Compelled disclosure of such communications between OLC and the NSC Legal Adviser could threaten the quality of presidential decisionmaking by impairing the deliberative process in which those decisions are made.

24.     OLC 2 is protected by the deliberative process privilege because the document is pre-decisional and contains  legal advice that was provided as part of a government deliberative process.  The document is pre-decisional in multiple ways.  First, because it was not transmitted directly, but only created in preparation for an oral briefing, the document is predecisional to what the Acting AAG of OLC would ultimately advise the Attorney General.  Second, to the extent that material in the document was conveyed orally to the Attorney General, that communication was predecisional to any ultimate decision the Attorney General would then make in advising the President.  The document is deliberative because it contained legal advice

10

from OLC to the Attorney General for use in his deliberations over how to advise the President on future military actions. The limited factual material contained in the document is closely intertwined with the legal advice and analysis. Compelled disclosure of the outline would undermine the deliberative processes of the Executive Branch—in this case, of OLC and the Attorney General. Attorneys at OLC are often asked to provide advice and analysis with respect to very difficult and unsettled questions of law, and on matters that can be quite controversial. It is essential to the proper functioning of the Executive Branch overall that OLC's internal notes regarding its legal advice not be inhibited by concerns about the risk of public disclosure. Protecting the confidentiality of OLC's legal advice provided in the context of Executive Branch deliberations is essential both to ensure that creative and sometimes controversial legal arguments and theories may be examined candidly, effectively, and in writing, and to ensure that the Attorney General and other Executive Branch officials continue to request and rely on frank legal advice from OLC attorneys on sensitive matters.

25.     OLC 2 is also protected by the attorney-client privilege. The outline was prepared by lawyers within OLC in preparation for providing legal advice to the Attorney General in connection with his role as chief legal adviser to the President. The limited factual material contained in the document was provided to OLC and the other attorneys by other executive branch officials for purposes of developing this confidential legal advice. The outline was intended to be confidential and to my knowledge has maintained its confidentiality. Having been asked to provide legal advice, OLC attorneys stood in a special relationship of trust with the Attorney General. Just as disclosure of client confidences in the course of seeking legal advice would seriously disrupt the relationship of trust so critical when attorneys formulate legal advice to their clients, so too would disclosure of the legal advice itself undermine that trust.

11

### *Withholding Pursuant to Exemptions One and Three*

26.     In connection with seeking advice from OLC, executive branch clients sometimes provide OLC with classified information or other information protected from disclosure under FOIA by statute.  OLC does not have original classification authority, but when it receives or makes use of classified information provided by its clients, OLC is required to mark and treat that information as classified to the same extent as its clients have identified such information as classified.  Accordingly, all classified information in OLC's possession or incorporated into its products has been classified by another entity with original classification authority.

27.     OLC 1 is marked as classified because it contains information from another agency or agencies that was marked as classified, and OLC has been informed that this information is properly classified and protected from disclosure by statute.  Accordingly, OLC is also withholding OLC 1 in part pursuant to FOIA Exemptions One and Three, 5 U.S.C. § 552(b)(1), (3), which exempt information classified in the interest of national defense or which is otherwise protected by statute.

28.     Because OLC lacks original classification authority, further information regarding the applicability of Exemption One to this document appears in another contemporaneously-filed declaration.

### *Segregability, Adoption, and Waiver*

29.     I have personally reviewed the documents at issue to determine whether any withheld portion or portions could be released without divulging information protected by one or more of the applicable FOIA exemptions.  All factual information contained in the documents was provided to OLC in confidence for the purpose of seeking legal advice from OLC, and the documents do not contain reasonably segregable, nonexempt information.

30.     To my knowledge, the documents have never been publicly adopted or

incorporated by reference by any policymaker as a basis for a policy decision.

31.     To my knowledge, the documents have not been previously disclosed publicly.  In

addition, I am not aware of any public statements by government officials that could constitute

waiver of the privileges applicable to the document.

* * * * * * *

32.     In conclusion, I respectfully submit that the documents described herein are

protected by the attorney-client and deliberative process privileges, and OLC 1 is also protected

by the presidential communications privilege.  Accordingly, both documents fall squarely within

Exemption Five.  The compelled disclosure of these documents would disrupt the attorney-client

relationship between OLC and its clients throughout the Executive Branch, would interfere with

the government's deliberative processes, and would disrupt the President's ability to carry out his

constitutional responsibilities.


I declare under penalty of perjury that the foregoing is true and correct.

Executed: November **8**, 2017, Washington, D.C.

_____

PAUL P. COLBORN

# Exhibit A

17-187 Rec'd 4/7/17

**Golden, Melissa (OLC)**

| | |
|---|---|
| **From:** | foia@protectdemocracy.org |
| **Sent:** | Friday, April 07, 2017 3:57 PM |
| **To:** | usdoj-officeoflegalcounsel@usdoj.gov |
| **Cc:** | Ben Berwick |
| **Subject:** | Freedom of Information Act Request - Expedited Processing |
| **Attachments:** | FOIA re Syria - OLC.pdf |

To Whom It May Concern:

Please see the attached Freedom of Information Act request.

Ben Berwick (cc'd), Counsel with Protect Democracy, can answer any questions about the request.

Thanks very much, and we look forward to hearing from you soon.

Sincerely,

Caroline McKay
The Protect Democracy Project



April 7, 2017

Melissa Golden
Lead Paralegal and FOIA Specialist
Department of Justice
Room 5511, 950 Pennsylvania Avenue, N.W.
Washington, DC 20530-0001
Phone: (202) 514-2053
Email: usdoj-officeoflegalcounsel@usdoj.gov

Re: Freedom of Information Act Request

To Whom It May Concern:

Pursuant to the Freedom of Information Act (FOIA), 5 U.S.C. § 552, The Protect Democracy Project hereby requests that your office produce within 20 business days the following records (see below for clarity on the types of records sought):

Any and all records, including but not limited to emails and memoranda, reflecting, discussing, or otherwise relating to the April 6, 2017 military strike on Syria and/or the President's legal authority to launch such a strike. This request includes, but is not limited to, internal Department of Justice communications, communications between Department of Justice employees and the Executive Office of the President, and communications between Department of Justice employees and other agencies.

The timeframe for this request is April 4, 2017 through the present.

<u>EXPEDITED PROCESSING</u>

We request that you expedite the processing of this request pursuant to 5 U.S.C. § 552(a)(6)(E) and 28 C.F.R. § 16.5(e). This request meets the criteria for expedited processing because it concerns "[a] matter of widespread and exceptional media interest in which there exist possible questions about the government's integrity that affect public confidence," 28 C.F.R. § 16.5(e)(1)(iv) and because there is an urgent need "to inform the public about an actual or alleged Federal Government activity." 28 C.F.R. § 16.5(e)(1)(ii). As explained below in more detail in the section of this request regarding a fee waiver, The Protect Democracy Project intends to disseminate the information obtained in response to this request.

There can be no question that the President's decision to initiate military action is of the utmost importance to the public.  Similarly, whether the President has the legal authority to launch a military strike – or used military force without legal authorization – is a question that is fundamental to our democracy.  The public has an immediate right to understand the administration's position with respect to the legality of the recent strike against Syria, and to assess whether that position is justified.

The American people and their representatives have already begun debating this issue of utmost importance. As we expect the President will comply with the War Powers Resolution and notify Congress of his military actions by the evening of April 8, 2017, 48 hours after these strikes were launched, the public debate on how Congress should exercise its co-equal role in this serious matter will intensify at that time. There is no way for the American people to advise their representatives of the public's view on this matter without a full understanding of the legal justification on which the President acted.

It is therefore incumbent upon the government and urgent for your office to share any responsive records in an expedited fashion because that is only way in a democracy for citizens and other branches of government to assess the actions that have been undertaken on our behalf in time to affect the present debate.

This request is made all the more urgent by the possibility that the President may decide to engage in further military action at any time.

Under penalty of perjury, and pursuant to 28 C.F.R. § 16.5(e)(3), I hereby affirm that the foregoing is true and correct to the best of my knowledge and belief.

<u>FEE WAIVER</u>

FOIA provides that any fees associated with a request are waived if "disclosure of the information is in the public interest because it is likely to contribute significantly to public understanding of the operations or activities of the government and is not primarily in the commercial interest of the requester."  5 U.S.C. § 552(a)(4)(A)(iii).  The core mission of The Protect Democracy Project, a new organization awaiting 501(c)(3) status, is to inform public understanding on operations and activities of the government. This request is submitted in consort with the organization's mission to gather and disseminate information that is likely to contribute significantly to the public understanding of executive branch operations and activities.  The Protect Democracy Project has no commercial interests.

In addition to satisfying the requirements for a waiver of fees associated with the search and processing of records, The Protect Democracy Project is entitled to a waiver of all fees except "reasonable standard charges for document duplication."  5 U.S.C. § 552(a)(4)(A)(ii)(II).  Federal law mandates that fees be limited to document duplication costs for any requester that qualifies as a representative of the news media.  *Id.*  The Protect Democracy Project operates in the tradition of 501(c)(3) good government

organizations that qualify under FOIA as "news media organizations."  Like those organizations, the purpose of The Protect Democracy Project is to "gather information of potential interest to a segment of the public, use its editorial skills to turn the raw materials into distinct work, and distribute that work to an audience."  *Nat's Sec. Archive v. Dep't of Defense*, 880 F.2d 1381, 1387 (D.C. Cir. 1989). We intend to give the public access to documents transmitted via FOIA on our website, www.unitedtoprotectdemocracy.org, and to provide information about and analysis of those documents as appropriate.

<u>RESPONSIVE RECORDS</u>

We ask that all types of records and all record systems be searched to discover records responsive to our request.  We seek records in all medium and format.  This includes, but is not limited to: agendas, manifests, calendars, schedules, notes, and any prepared documentation for meetings, calls, teleconferences, or other discussions responsive to our request; voicemails; e-mails; e-mail attachments; talking points; faxes; training documents and guides; tables of contents and contents of binders; documents pertaining to instruction and coordination of couriers; and any other materials.  We ask that you search all systems of record, including electronic and paper, in use at your agency.  The Protect Democracy Project would prefer records in electronic format, saved as PDF documents, and transmitted via email or CD-rom.

If you make a determination that any responsive record, or any segment within a record, is exempt from disclosure, we ask that you provide an index of those records at the time you transmit all other responsive records.  In the index, please include a description of the record and the reason for exclusion with respect to each individual exempt record or exempt portion of a record, as provided by *Vaughn v. Rosen*, 484 F.2d 820 (D.C. Cir. 1973), cert. denied, 415 U.S. 977 (1974).  When you deem a portion of a record exempt, we ask that the remainder of the record to be provided, as required by 5 U.S.C. § 552(b).

Given the 20-day statutory deadline, we hope to be as helpful as possible in clarifying or answering questions about our request.  Please contact me at FOIA@protectdemocracy.org or (202) 599-0466 if you require any additional information.  We appreciate your cooperation, and look forward to hearing from you very soon.

Sincerely,

Ian Bassin
Executive Director
The Protect Democracy Project

# Exhibit B



**U.S. Department of Justice**

Office of Legal Counsel

_____

*Washington, D.C. 20530*

April 26, 2017

Ian Bassin
Executive Director
The Protect Democracy Project
FOIA@protectdemocracy.org

       Re:    **FOIA Tracking No. FY17-187**

Dear Mr. Bassin:

       This letter acknowledges receipt of your April 7, 2017 Freedom of Information Act ("FOIA") request to the Office of Legal Counsel ("OLC"), in which you sought "records . . . reflecting, discussing, or otherwise relating to the April 6, 2017 military strike on Syria and/or the President's legal authority to launch such a strike[,] . . . [from] April 4, 2017 through the present." We received your request on April 7, 2017, and it has been assigned tracking number **FY17-187.**

       Your request for expedited processing has been granted and your request has been assigned to the "expedited" processing track. Because of the considerable number of FOIA requests received by OLC before your request, including other previously expedited requests, our staff has not yet been able to complete a search to determine whether there are documents within the scope of your request. Please note that it also is likely that we will be unable to respond to your request within the twenty-day statutory deadline. I regret the necessity of this delay, but I assure you that your request will be given priority and processed as soon as practicable.

       We have not yet made a decision on your request for a fee waiver. We will do so after we determine whether fees will be assessed for this request.

       In the meantime, if you have any questions or wish to discuss your request, you may contact Melissa Golden, our Lead Paralegal and FOIA Specialist and FOIA Liaison, at (202) 514-2053, or at Office of Legal Counsel, United States Department of Justice, 950 Pennsylvania Avenue, N.W., Room 5511, Washington, DC 20530.

                          Sincerely,

                          *Paul P. Colborn*

                          Paul P. Colborn
                          Special Counsel

# Exhibit C



**U.S. Department of Justice**

Office of Legal Counsel

_Washington, D.C.  20530_

August 18, 2017

Ian Bassin
Executive Director
The Protect Democracy Project
FOIA@protectdemocracy.org

      Re:    **FOIA No. FY17-187; Protect Democracy Project v. DOD, No. 17-cv-842 (D.D.C.)**

Dear Mr. Bassin:

      This letter partially responds to your April 7, 2017 Freedom of Information Act ("FOIA") request to the Office of Legal Counsel ("OLC"), in which you sought "records . . . reflecting, discussing, or otherwise relating to the April 6, 2017 military strike on Syria and/or the President's legal authority to launch such a strike[,] . . . [from] April 4, 2017 through the present."  As you know, the request is also the subject of the above-captioned litigation, and the request has been narrowed in certain ways pursuant to agreement through counsel.

      Consistent with our proposal memorialized in the court's order of August 4, 2017, we have processed documents "most relevant" to your request and have identified three responsive records. We have referred one record to the Office of Information Policy, which we understand has located the same record and will respond to you directly with respect to that record today.  We are withholding the remaining two records in full, one pursuant to FOIA Exemptions One and Five, 5 U.S.C. § 552(b)(1), (b)(5), and the other pursuant to FOIA Exemption Five.  The first withheld document (seven pages) is properly classified and protected by the deliberative process, attorney-client, and presidential communications privileges, and the second (two pages) is protected by the deliberative process and attorney-client privileges.  None of the withheld records is appropriate for discretionary release.  We are continuing to search for and process other responsive records.

      For your information, Congress excluded three discrete categories of law enforcement and national security records from the requirements of the FOIA.  See 5 U.S.C. § 552(c).  This response is limited to those records that are subject to the requirements of the FOIA.  This is a standard notification that is given to all our requesters and should not be taken as an indication that excluded records do, or do not, exist.

      You may contact Kathryn Davis of the Civil Division, Federal Programs Branch, at 202-616-8298, for any further assistance and to discuss any aspect of your request.  Additionally, you may contact the Office of Government Information Services ("OGIS") at the National Archives and Records Administration to inquire about the FOIA mediation services they offer.  The contact information for OGIS is as follows: Office of Government Information Services, National Archives and Records Administration, Room 2510, 8601 Adelphi Road, College Park, Maryland 20740-6001, e-mail at ogis@nara.gov; telephone at 202-741-5770; toll free at 1-877-684-6448; or facsimile at 202-741-5769.

Although your request is the subject of ongoing litigation, and administrative appeals are not ordinarily acted upon in such situations, I am required by statute and regulation to inform you of your right to file an administrative appeal. You may administratively appeal by writing to the Director, Office of Information Policy ("OIP"), United States Department of Justice, Suite 11050, 1425 New York Avenue, NW, Washington, DC 20530-0001, or you may submit an appeal through OIP's FOIAonline portal by creating an account on the following web site: https://foiaonline.regulations.gov/foia/action/public/home. Your appeal must be postmarked or electronically transmitted within 90 days of the date of my response to your request. If you submit your appeal by mail, both the letter and the envelope should be clearly marked "Freedom of Information Act Appeal."

Sincerely,

*for* Paul P. Colborn
Special Counsel

cc:     Kathryn Davis, Trial Attorney
        Civil Division, Federal Programs Branch

2

# Exhibit D



**U.S. Department of Justice**

Office of Legal Counsel

*Washington, D.C.  20530*

September 8, 2017

Ian Bassin
Executive Director
The Protect Democracy Project
FOIA@protectdemocracy.org

Re:     **FOIA No. FY17-187; Protect Democracy Project v. DOD, No. 17-cv-842 (D.D.C.)**

Dear Mr. Bassin:

This letter constitutes a final response to your April 7, 2017 Freedom of Information Act ("FOIA") request to the Office of Legal Counsel ("OLC"), in which you sought "records . . . reflecting, discussing, or otherwise relating to the April 6, 2017 military strike on Syria and/or the President's legal authority to launch such a strike[,] . . . [from] April 4, 2017 through the present." As you know, the request is also the subject of the above-captioned litigation, and the request has been narrowed in certain ways pursuant to agreement through counsel.  You received a partial response regarding three documents on August 18, 2017.

Consistent with our proposal memorialized in the court's order of August 4, 2017, and our prior partial response, we have completed the search for OLC records responsive to the narrowed request.  We have not located any additional non-duplicative responsive records that are not already being processed by another recipient of the request.

For your information, Congress excluded three discrete categories of law enforcement and national security records from the requirements of the FOIA.  See 5 U.S.C. § 552(c).  This response is limited to those records that are subject to the requirements of the FOIA.  This is a standard notification that is given to all our requesters and should not be taken as an indication that excluded records do, or do not, exist.

You may contact Kathryn Davis of the Civil Division, Federal Programs Branch, at 202-616-8298, for any further assistance and to discuss any aspect of your request.  Additionally, you may contact the Office of Government Information Services ("OGIS") at the National Archives and Records Administration to inquire about the FOIA mediation services they offer.  The contact information for OGIS is as follows: Office of Government Information Services, National Archives and Records Administration, Room 2510, 8601 Adelphi Road, College Park, Maryland 20740-6001, e-mail at ogis@nara.gov; telephone at 202-741-5770; toll free at 1-877-684-6448; or facsimile at 202-741-5769.

Although your request is the subject of ongoing litigation, and administrative appeals are not ordinarily acted upon in such situations, I am required by statute and regulation to inform you of your right to file an administrative appeal.  You may administratively appeal by writing to the Director, Office of Information Policy ("OIP"), United States Department of Justice, Suite 11050, 1425 New York Avenue, NW, Washington, DC 20530-0001, or you may submit an appeal through OIP's

FOIAonline portal by creating an account on the following web site:
https://foiaonline.regulations.gov/foia/action/public/home.   Your appeal must be postmarked or
electronically transmitted within 90 days of the date of my response to your request.   If you submit
your appeal by mail, both the letter and the envelope should be clearly marked "Freedom of
Information Act Appeal."

Sincerely,

Paul P. Colborn
Special Counsel


cc:    Kathryn Davis, Trial Attorney
       Civil Division, Federal Programs Branch