# EXHIBIT 4

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| THE PROTECT DEMOCRACY PROJECT INC., <br><br> Plaintiff, <br><br> v. <br><br> U.S. DEPARTMENT OF DEFENSE, *et al.*, <br><br> Defendants. | Civ. No. 17-cv-0842 (CRC) |

## DECLARATION OF MARK H. HERRINGTON

Pursuant to 28 U.S.C. § 1746, I, Mark H. Herrington, hereby declare under penalty of perjury that the following is true and correct:

1. I am an Associate Deputy General Counsel in the Office of General Counsel ("OGC") of the United States Department of Defense ("DoD"). OGC provides legal advice to the Secretary of Defense and other leaders within the DoD. I am responsible for, among other things, overseeing Freedom of Information Act ("FOIA") litigation involving DoD. I have held my current position since March 2007. My duties include coordinating searches across DoD to ensure thoroughness, reasonableness, and consistency, and also coordinating productions of responsive documents, including the appropriate redaction of some of those documents.

2. The statements in this declaration are based upon my personal knowledge and upon my review of information available to me in my official capacity. Specifically, I am the OGC counsel currently assigned to this case.

3. On April 7, 2017, Plaintiff sent a FOIA request to DoD seeking "[a]ny and all records, including but not limited to emails and memoranda, reflecting, discussing, or otherwise relating to the April 6, 2017 military strike on Syria and/or the President's legal authority to

1

launch such a strike." The request specified the timeframe of the request as April 4, 2017 to the present.

4. DoD acknowledged receipt of Plaintiff's FOIA request by letter dated April 12, 2017.

5. After discussions with Defendants, Plaintiff agreed to narrow the topic of its request to documents analyzing or explaining the President's legal authority to launch the April 6, 2017 military strike against a Syrian government airbase (Shayrat Airfield) in Syria. The parties agreed that Defendants may exclude from processing all prior non-final versions of documents that it is processing in response to Plaintiff's FOIA requests or that have been publicly released, including correspondence discussing or transmitting those prior versions. Where a document was never finalized, Defendants processed only the last edited version of such document.

## DoD's Search

6. In response to Plaintiff's FOIA request, I tasked attorneys within DoD OGC (International Affairs) and attorneys in the Office of the Legal Advisor to the Chairman of the Joint Chiefs of Staff who were involved in predecisional deliberations concerning the President's legal authority to conduct the strike. These two offices in the Office of the Secretary of Defense and the Joint Staff are the only offices likely to contain responsive records, as these military and civilian attorneys are the advisors to the most senior officials of DoD.

7. The Joint Staff searched the files of the Legal Advisor to the Chairman of the Joint Staff and another attorney in his office who were involved in predecisional deliberations. They also searched the files of the J3 – the division in charge of operations. Searches were performed at all classification levels and included electronic searches of emails and the drives of individuals involved in the deliberations. Search terms included "Syria," "Syrian," "Chemical

Weapons," "targets," "targeting," "strike options," "strike," "POTUS," "SecDef," and "Shayrat." The search encompassed the timeframe of April 4, 2017, to the date of the search, as stated in Plaintiff's request.

8.   Attorneys in DoD OGC (International Affairs) also searched for records at all levels of clearance. They searched personal and shared electronic folders and emails. For those electronic searches, search terms included "Syria," "CW," "chemical," "April 7," "April 6," "Shayrat," and the names of three attorneys involved in the deliberations. This search also encompassed the timeframe of April 7, 2017, to the date of the search.

9.   After I reviewed the potentially responsive material, determined which documents were within the scope of the narrowed request, and removed duplicative documents, DoD's search located four documents responsive to Plaintiff's request. While one of the documents was released in part, the majority of the information was withheld pursuant to FOIA exemptions 1 and 5.

10.   On August 18, 2017, DoD provided an interim response, informing Plaintiff that DoD located two documents responsive to its narrowed request. Both documents were withheld in full, one under FOIA Exemption 5 and the other under Exemptions 1 and 5. *Id.*

11.   On September 8, 2017, DoD issued a final response to Plaintiff's request. DoD notified Plaintiff that it had located two additional documents. One document was released in part with portions of the document withheld pursuant to FOIA Exemption 5; the other document was withheld in full pursuant to Exemption 1 and 5. *Id*

### Information Exempt Under Exemption 5

12.   Exemption 5, 5 U.S.C. § 552(b)(5), permits the withholding of "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency." Exemption 5 allows an agency to exempt information

3

that is normally privileged in the civil discovery context. As relevant here, these privileges include the pre-decisional, deliberative process privilege; the presidential communication privilege; and the attorney-client privilege.

13. The very nature of Plaintiff's request for records relating to the "President's legal authority to launch the April 6, 2017 military strike" indicates that the responsive documents would be exempt under b(5). The four responsive documents identified included a legal memorandum prepared by an interagency group of lawyers in order to advise the President, as well as three sets of talking points.

14. The three sets of talking points are titled "NSC Chemical Weapons Use Guidance," "Press Guidance: Basis for Using Force," and "Proposed Public Affairs Guidance.[1]" See Vaughn index, Docs. 6 (DOD 4-5), 8 (DOD 13-18), 10 (DOD 1-3) These documents contain advice to senior executive branch officials regarding both broad issues to emphasize when discussing the Syrian strike and recommendations for the specific points that should be illuminated in any such discussion. The Press Guidance: Basis for Using Force, and the Proposed Public Affairs Guidance also included suggested responses to hypothetical questions. These documents are predecisional, as they are not press releases; but rather, advice on where to focus discussion. Compelled disclosure of such advice would seriously inhibit the candor and effectiveness of the advisers engaged in this deliberative process. In addition, because the talking points represent only the views of the authors, their release could confuse or mislead the public regarding the Government's position if a senior official stated something contradictory to such advice. Thus they are all exempt as deliberative process privileged.

---

[1] The "Proposed Public Affairs Guidance" originally located by DoD OGC was a draft version of Central Command ("CENTCOM") talking points circulated prior to the Shayrat Airfield strike. Because the document therefore concerned potential military operations, it was properly classified at the Secret level. I obtained a final and unclassified version of these talking points from CENTCOM, which Plaintiff agreed DoD could substitute to avoid the issue of also withholding the originally located document under FOIA exemption 1.

4

15. The remaining document is the legal memorandum prepared by an interagency group of lawyers for purpose of providing advice to the President and other senior executive branch officials of the legal basis for the strike in Syria. See Vaughn index, Doc. 3 (DOD 6-12). Specifically, the legal memorandum was solicited and received by the staff of the most senior legal counsel of the National Security Council ("NSC"), the NSC Legal Adviser, who investigates and formulates advice for the President and his top national security advisors on national security legal issues. The document also contains recommendations for policy action based upon the analysis. The document is predecisional, and compelled disclosure of such advice would seriously inhibit the candor and effectiveness of the advisers engaged in this highly deliberative process. Further, the version of this memorandum located by DoD is an earlier draft of the document located by other defendant agencies, and its release would reveal even further predecisional deliberations. It is therefore exempt as deliberative process privileged.

16. The legal analysis is also exempt as attorney/client privileged. Generally speaking, the privilege applies when a client communicates something to his or her lawyer with the intent that it remain confidential and for the purposes of securing either (i) an opinion on law or (ii) legal services or (iii) assistance in some legal proceedings. The privilege also protects confidential communications from the lawyer back to the client. In this case, the document contains the consensus advice of a group of executive branch attorneys to the NSC Legal Adviser regarding the President's legal authorities for conducting a particular military action. The communication was intended to be confidential and there is no indication that that confidentiality was violated.

17. Finally, this legal analysis is also exempt as presidential communications privileged, which protects communications among the President and his advisors. This

document was solicited and received by the staff of the NSC Legal Adviser, who has broad and significant responsibility for investigating and formulating advice to the President on, among other things, his authority to order military action pursuant to the President's duties as Commander in Chief.[2]

### Conclusion

18. In summary, DoD performed an adequate search that was reasonably likely to uncover all non-duplicative responsive records. For the reasons set forth above, certain information within the responsive documents has been validly withheld pursuant to FOIA Exemption 5.

19. All of the documents addressed herein have been carefully reviewed for reasonable segregation of non-exempt information. With respect to "NSC Chemical Weapons Use Guidance," it was determined that some non-exempt information could be segregated for release. For the remaining documents withheld in full, however, it has been determined that no segregation of meaningful information in the withheld documents can be made without disclosing information warranting protection under the law.

20. I declare under penalty of perjury of the laws of the United States of America that the foregoing is true and correct to the best of my knowledge and information.

Dated this 3rd day of November, 2017, in Arlington, VA.

_____
Mark H. Herrington, Esq.

---

[2] This memorandum also contains certain highly classified information being withheld pursuant to exemptions 1 and 3. The basis for this withholding is detailed in the declaration submitted by the Office of the Director of National Intelligence