**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **THE PROTECT DEMOCRACY PROJECT, INC.**, <br><br> Plaintiff, <br><br> v. <br><br> **U.S. DEPARTMENT OF DEFENSE**, *et al.*, <br><br> Defendants. | Case No. 17-cv-00842 (CRC) |

## ORDER

Last week, the Department of Justice's Office of Legal Counsel ("OLC") publicly released a 22-page memorandum justifying the legality of missile strikes that President Trump directed against Syria on April 13, 2018.  See Steven A. Engel, Ass't Att'y Gen., OLC, April 2018 Airstrikes Against Syrian Chemical-Weapons Facilities (May 31, 2018), http://www.justice.gov/olc/opinion/file/1067551/download [hereinafter "2018 Memo"].[1]  The memorandum concluded that, while Congress had not authorized the use of military force in Syria, the President nevertheless had authority to launch the strike under Article II of the Constitution. This was true, according to the memorandum, because the President had reasonably determined that the strike was in the national interest and the strike did not amount to "war" in the sense meant by Article I, Section 8, which gives Congress the power "[t]o declare war."

This case involves a different legal memorandum—one related to a missile strike that President Trump launched against Syria in April of *last year*.  The plaintiff lodged a request

---

[1] The Court has taken judicial notice of the memorandum: its release was widely reported, see, e.g., Charlie Savage, Trump Had Power to Attack Syria Without Congress, Justice Dept. Memo Says, N.Y. Times (June 1, 2018), https://www.nytimes.com/2018/06/01/us/politics/trump-war-powers-syria-congress.html, and its relevance to this case is obvious.

under the Freedom of Information Act ("FOIA") seeking this 2017 memorandum, which was coauthored by OLC, the Department of State, and the Department of Defense. The government has not released this earlier memorandum; quite the contrary, it argues that the plaintiff is not entitled the memorandum under FOIA because it falls within one of the statute's exemptions.

Why is the just-released memorandum relevant to this case? One of the plaintiff's arguments on summary judgment is that—even if the government could rely on one of FOIA's exemptions to withhold the nonclassified legal analysis contained in the 2017 memorandum—it has waived those exemptions by publicly acknowledging at least some of the contents of that memorandum. "If the government has officially acknowledged information, a FOIA plaintiff may compel disclosure of that information even over an agency's otherwise valid exemption claim." ACLU v. DOD, 628 F.3d 612, 620 (D.C. Cir. 2011). "For information to qualify as 'officially acknowledged,' it must satisfy three criteria: (1) the information requested must be as specific as the information previously released; (2) the information requested must match the information previously disclosed; and (3) the information requested must already have been made public through an official and documented disclosure." Id. at 620–21. Similarly, "the attorney-client and deliberative privileges, in the context of Exemption 5, may be lost by disclosure." N.Y. Times Co. v. DOJ, 756 F.3d 100, 114 (2d Cir. 2014).

Until recently, the Court was skeptical that the plaintiff could show that the government had officially acknowledged the contents of the 2017 memorandum. The D.C. Circuit's test for official acknowledgement is, after all, exacting. "Prior disclosure of similar information does not suffice; instead, the *specific* information sought by the plaintiff must already be in the public domain by official disclosure." Wolf v. CIA, 473 F.3d 370, 378 (D.C. Cir. 2007). The plaintiff's argument has become more plausible, however, with the government's release of the

2018 memorandum. To be sure, the 2018 memorandum does contain some factual background specific to the April 2018 strike. See 2018 Memo at 1–3. But little of its legal reasoning—which consumes the bulk of its 22 pages—is particularized to the recent strike. The first eight pages of its analysis discuss uses of force by prior presidential administrations. Id. at 3–9. The next nine explain the national interests supporting the 2018 strikes, but (at least on the Court's read) those interests seem readily applicable to the 2017 strike. See, e.g., id. at 18 ("In sum, the President here was faced with a grave risk to regional stability, a serious and growing humanitarian disaster, and the use of weapons repeatedly condemned by the United States and other members of the international community. In such circumstances, the President could reasonably conclude that these interests provided a basis for airstrikes on facilities that support the regime's use of chemical weapons."). The final five pages—which evaluate whether the 2018 strike rose to the level of a "war"—are more particularized, but similarly contain portions with possible relevance to the 2017 strike. See, e.g., id. at 22 (citing "the absence of ground troops, the limited mission and time frame, and the efforts to avoid escalation").

The potentially broad applicability of its reasoning alone might not render the 2018 memorandum an official acknowledgement of the contents of the 2017 memorandum. But some of the reasoning articulated in the 2018 memorandum also closely aligns with the publicly stated rationale for the 2017 strike. Indeed, the 2018 memorandum explicitly draws on the administration's public-facing legal justifications for the 2017 strike. For example:

> In carrying out these strikes, the President also relied on the national interest in deterring the use and proliferation of chemical weapons. The President previously relied upon this interest in ordering the April 2017 airstrike in response to the attack on Khan Shaykhun. See 2017 Congressional Notification (stating that the President directed a strike on the Shayrat military airfield to "degrade the Syrian military's ability to conduct further chemical weapons attacks and to dissuade the Syrian regime from using or proliferating chemical weapons, thereby promoting the stability of the region and averting a worsening of the region's current humanitarian catastrophe").

2018 Memo at 16; see also Pl.'s Mot. Summ. J. Ex. H, at 3 (on-the-record statement of National Security Council spokesperson laying out similar rationale for 2017 strike).

The Court therefore finds it at least plausible that "specific information in the public domain" (*i.e.*, the 2018 memorandum) duplicates "that being withheld" (*i.e.*, the 2017 memorandum). Afshar v. Dep't of State, 702 F.2d 1125, 1130 (D.C. Cir. 1983). Mindful of the D.C. Circuit's strict standard for official acknowledgement, however, the Court would like to hear the government's views on why that may not be true. Depending on its arguments, the Court may need to review the 2017 memorandum *in camera* to determine whether some or all of its contents have been officially acknowledged.

It is therefore **ORDERED** that:

1.     Assuming the government is unwilling to reconsider its position on the release of the 2017 interagency memorandum, the government shall file a supplemental brief by June 19, 2018—plus affidavits if necessary—addressing the following issues: (a) whether OLC's release of its memorandum discussing the April 2018 missile strike on Syria constitutes a waiver of any applicable FOIA exemptions covering some or all of the 2017 legal memorandum sought by the plaintiff in this case (specifically, documents 1–3 in the Vaughn index); and (b) whether the Court should review documents 1–3 *in camera* to determine whether waiver has occurred.

2.     The plaintiff shall file any response to the government's supplemental brief by July 3, 2018.

**SO ORDERED**.

CHRISTOPHER R. COOPER  
United States District Judge

Date: June 5, 2018