**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| THE PROTECT DEMOCRACY PROJECT, INC., | |
| *Plaintiff,* | |
| v. | No. 17-cv-0842-CRC |
| U.S. DEPARTMENT OF DEFENSE, *et al.,* | |
| *Defendants.* | |

**DEFENDANTS' SUPPLEMENTAL BRIEF IN
RESPONSE TO THE COURT'S ORDER OF JUNE 5, 2018**

**INTRODUCTION**

In their briefs on summary judgment, Defendants demonstrated that they properly

withheld in its entirety a legal memorandum providing predecisional legal advice and

recommendations to the President and his top national security advisers regarding the legal basis

for a then-contemplated U.S. military airstrike in Syria in April 2017.  *See Vaughn* Index, Docs.

1-3, ECF No. 24-7.  The legal memorandum is protected from disclosure by, *inter alia*, Freedom

of Information Act ("FOIA") Exemption 5, pursuant to the presidential communications,

deliberative process, and attorney-client privileges.  On May 31, 2018, after Defendants provided

final FOIA responses and the parties completed briefing on cross-motions for summary

judgment, the Office of Legal Counsel ("OLC") of the U.S. Department of Justice publicly

released an opinion explaining the legal basis for the President's direction of separate military

airstrikes in Syria in April 2018.  *See April 2018 Airstrikes Against Syrian Chemical-Weapons

Facilities*, 42 Op. O.L.C. ___ (May 31, 2018) ("2018 OLC Opinion," or "Opinion").  Shortly

thereafter, the Court ordered Defendants to file a supplemental brief addressing the questions of

whether the release of the 2018 OLC Opinion constitutes a waiver of the applicable FOIA

exemptions covering the legal memorandum and whether the Court should review the legal

memorandum *in camera*.  *See* Order at 4 (Jun. 5, 2018), ECF No. 36.

The Court should answer each question in the negative.  As a matter of law, the

discretionary release of the 2018 OLC Opinion has no bearing on Defendants' separate decision

in 2017 to withhold a different legal memorandum.  The record before the Court amply shows

that no waiver of Defendants' valid exemption claims covering the legal memorandum has

occurred, and any claim to the contrary would be purely speculative.  Moreover, expanding the

waiver doctrine to the facts of this case would be fundamentally inconsistent with the public

policy considerations underlying the D.C. Circuit's stringent waiver test.  And finally, because

the 2018 OLC Opinion is irrelevant to the Court's review and because Defendants have

sufficiently justified their withholding of the legal memorandum through detailed agency

declarations, including a supplemental OLC declaration submitted herewith, *in camera* review of

the legal memorandum is unnecessary to resolve this case on summary judgment in Defendants'

favor.

**ARGUMENT**

**I.      Public Disclosure of the 2018 OLC Opinion Does Not Waive Defendants' Valid
         Exemption 5 Claims With Respect to a Separate Legal Memorandum Involving
         a Separate Decision**

Defendants properly asserted FOIA Exemption 5 to withhold the legal memorandum in

its entirety and none of these valid withholding claims has been waived.[1]  An agency may waive

---

[1] Defendants also asserted Exemptions 1 and 3 to protect from disclosure discrete words and
phrases in the legal memorandum that are currently and properly classified at the SECRET and
TOP SECRET levels.  *See* Defs.' Mem. of Law In Support of Defs.' Mot. for Summ. J. ("Defs.'
Mem.") at 26-32 (citing the Declaration of Patricia Gaviria, Info. Mgmt. Div., Office of the Dir.
of Nat'l Intelligence ("ODNI"), ECF No. 24-8 ("Gaviria Decl.")), ECF No. 24-1.  Although

a claim of privilege (and thus the protection of Exemption 5) by publicly disclosing the specific

information sought to be withheld.  *See Mobil Oil Corp. v. EPA*, 879 F.2d 698, 701 (9th Cir.

1989) (addressing waiver in the context of Exemption 5).  While an agency bears the burden of

establishing that a claimed exemption applies, "a plaintiff asserting a claim of prior disclosure

must bear the initial burden of pointing to specific information in the public domain that appears

to duplicate that being withheld."  *Afshar v. Dep't of State*, 702 F.2d 1125, 1130 (D.C. Cir.

1983); *accord Mobil Oil*, 879 F.2d at 701; *Assassination Archives & Research Ctr. ("AARC") v.*

*CIA*, 334 F.3d 55, 60 (D.C. Cir. 2003).  "If a requester is unable to establish that the material he

seeks is in the public domain," the agency can withhold the material so long as it satisfies each

element of the claimed exemption.  *Davis v. U.S. Dep't of Justice*, 968 F.2d 1276, 1280 (D.C.

Cir. 1992).[2]

---

Plaintiff does not challenge Defendants' Exemption 1 and 3 claims, *see* Pl.'s Mem. in Support of
Pl.'s Cross Mot. for Summ. J. & Opp'n to Defs.' Mot. for Summ. J. at 8-10, ECF No. 26-2, the
Court's Order nevertheless instructed Defendants to address "any applicable FOIA exemptions
covering some or all of the 2017 legal memorandum," Order at 4.  Accordingly, as explained in
her supplemental declaration, the ODNI declarant has confirmed that the 2018 OLC Opinion
"does not contain or officially acknowledge the specific information that the [Intelligence
Community] has determined should be withheld" from the legal memorandum under Exemptions
1 and 3, nor has it changed the classification status of the information.  *See* First Suppl. Decl. of
Patricia Gaviria ¶ 5 (attached as Exhibit 1).

[2] As the D.C. Circuit held in *Bonner v. U.S. Dep't of State*, 928 F.2d 1148 (D.C. Cir. 1991),
except in "certain limited situations" not applicable here, *id.* at 1153 n.10, an agency's decision
to withhold a document pursuant to a FOIA exemption "ordinarily must be evaluated as of the
time it was made," *id.* at 1152 ("[t]o require an agency to adjust or modify its FOIA responses
based on post-response occurrences could create an endless cycle of judicially mandated
reprocessing").  Indeed, some judges in this district have found that waiver in FOIA cases is
applicable only to certain types of "*prior* disclosure[s]" of information that predate a FOIA
request or lawsuit.  *See Sinito v. U.S. Dep't of Justice*, No. 87-cv-0814, 2000 WL 36691372, at
*5 (D.D.C. Jul. 11, 2000) (emphasis added); *see also Sai v. Trans. Sec. Admin.*, No. 14-cv-403,
2018 WL 2364290, at *22 (D.D.C. May 24, 2018).

Here, the Court should reject a waiver argument based on the public release of the 2018 OLC Opinion for three reasons: (1) the record establishes that the two documents represent separate instances of legal advice a year apart on separate issues and the Opinion does not duplicate the withheld legal memorandum, (2) any claim that it does would be based purely on speculation, and (3) expansion of the waiver argument to the facts of this case would be inconsistent with the policy considerations that underlie the D.C. Circuit's stringent waiver test.

1.    As the Court recognized in its Order, the D.C. Circuit's test for waiver in FOIA cases is "exacting."  Order at 2.  To meet this high hurdle, Plaintiff must point in the public record to "'specific' information *identical* to that being withheld."  *Davis*, 968 F.2d at 1280 (finding plaintiff must show "that there is a permanent public record of the *exact* portions [of the materials] he wishes.") (emphasis added).  A public disclosure does not result in waiver unless the information disclosed "precisely track[s] the records sought to be released."  *AARC*, 334 F.3d at 60.  As the D.C. Circuit cautioned in *Cottone v. Reno*, 193 F.3d 550, 555 (D.C. Cir. 1999), a court "must be confident that the information sought is truly public and that the requester receive no more than what is publicly available before [it] find[s] waiver."

In the context of privileges, the waiver test should not be conflated with the distinct concept of official acknowledgment, which courts in this Circuit have typically applied to Exemption 1 claims.  *See, e.g.*, *Wolf v. CIA*, 473 F.3d 370, 378 (D.C. Cir. 2007).  The "matching" requirement of the official acknowledgment test makes sense in the context of classified facts whose disclosure would harm the United States because, once a particular piece of factual information is officially disclosed to the public, the harm has already occurred no matter how many more times the fact is disclosed.  By contrast, privileges such as those in dispute here cover particular *communications*, not mere information.  *See Upjohn Co. v. United*

4

*States*, 449 U.S. 383, 395-96 (1981); *see also* Kenneth W. Graham, Jr., *Federal Practice & Procedure, Federal Rules of Evidence* § 5729 (1st ed.) (waiver "requires disclosure of a privileged communication; revealing the information communicated is not a waiver regardless of how much such disclosure may sap the value of the privilege").  The disclosure of privileged legal advice in one context does not necessarily effect a disclosure of advice in another, such as when advice is provided to different clients or to the same client at a different time, even if the advice was based on the same or similar legal analysis.  *Cf. In re Sealed Case,* 877 F.2d 976, 981 (D.C. Cir. 1982) (holding that scope of attorney-client privilege waiver "properly depend[s] heavily on the factual context in which the privilege is asserted").

Similarly, the deliberative process privilege does not depend on the specific facts or analysis at issue; rather, it is the authors' advice and recommendations, and the selection of particular facts or information to be provided to the decisionmaker, that are protected.  *See Nat'l Sec. Archive v. CIA*, 752 F.3d 460, 465 (D.C. Cir. 2014).  Each deliberation is independently entitled to protection, regardless of the content of the advice or information communicated to the decisionmaker.  Courts therefore regularly find that the deliberative process privilege protects (in full) drafts of final and even public documents, notwithstanding that the drafts would almost certainly have identical or nearly identical language to that in the final public version.  *See, e.g.*, *Russell v. Dep't of the Air Force*, 682 F.2d 1045, 1048-49 (D.C. Cir. 1982) (holding deliberative process privilege applied to early drafts of Air Force report despite public release of final report).

Here, it is clear from the face of the Opinion, and from Defendants' descriptions of the legal memorandum in the record, that the withheld document is in several fundamental, "material respect[s] different" from the Opinion.  *Afshar*, 702 F.2d at 1132.  As an initial matter, the unclassified Opinion was not drafted by the same attorneys who authored the classified withheld

legal memorandum.  *See, e.g.*, Third Decl. of Paul P. Colborn, Office of Legal Counsel, U.S.

Dep't of Justice ("Third Colborn Decl.") ¶ 5 (attached as Exhibit 2); Decl. of Paul P. Colborn

("Colborn Decl.") ¶ 22 ("[t]he document was authored by an interagency group of lawyers,

coordinated by lawyers on the staff of the NSC [National Security Council]"), ECF No. 24-3.  It

was not solicited or received by the same presidential advisers.  *See, e.g.*, Third Colborn Decl. ¶

5; Suppl. Decl. of Eric F. Stein, Office of Info. Programs and Servs., U.S. Dep't of State ¶ 6

("the document was solicited and received by the Deputy NSC Legal Adviser"), ECF No. 28-1.

Unlike the formal 22-page Opinion written by OLC after the April 2018 airstrikes, the seven-

page legal memorandum was drafted as part of the Executive's pre-decisional, deliberative

process in contemplation of the proposed military action in 2017 and, in addition to legal

analysis, contains recommended policy actions.  *See e.g.*, Colborn Decl. ¶ 21; Decl. of Mark

Herrington, Office of General Counsel, U.S. Dep't of Def. ¶ 15, ECF No. 24-5.  And most

importantly, the withheld legal memorandum is a wholly separate instance of legal advice:  it

pertains to a separate request for and communication of legal advice in relation to a distinct

presidential decision-making process in contemplation of a different military strike occurring one

year earlier.  *See* Third Colborn Decl. ¶ 8.

Additionally, the Third Colborn Declaration confirms, based on the declarant's personal

review, that the content of the documents is fundamentally different and that the 2018 OLC

Opinion "does not duplicate" the information in the withheld legal memorandum.  *See* Third

Colborn Decl. ¶¶ 4, 6.  "Nothing in the Opinion quotes from, describes, discloses, or even refers

to [the legal memorandum]" or "any legal advice that OLC or any other government attorney did

or did not provide to the President or his senior advisers prior to the 2017 military strike."  *Id.* ¶

9.  As such, an order compelling disclosure of the legal memorandum would cause the disclosure

of information that is not publicly available.  *Id.* ¶ 6; *see Cottone*, 193 F.3d at 555.

Admittedly, both documents relate to the President's authority to conduct particular

military airstrikes in Syria, one in 2017 and one in 2018.  But even assuming without conceding

that both documents might contain some similar legal analysis, "disclosure of similar

information does not suffice."  *Wolf*, 473 F.3d at 378.  Indeed, courts "generally have found that

the release of certain documents waives FOIA exemptions *only for those documents released*."

*Mobil Oil*, 879 F.2d at 701 (citations omitted; emphasis in original).[3]  And in the context of

privileged documents like the legal memorandum, the D.C. Circuit has made clear that the

concept of subject-matter waiver "has not been adopted with regard to executive privileges

generally, or to the deliberative process privilege in particular."  *In re Sealed Case*, 121 F.3d

729, 741 (D.C. Cir. 1997).  To the contrary, "release of a document only waives these privileges

for the document or information specifically released, and not for related materials."  *Id.*; *see*

*also, e.g.*, *Bayala v. U.S. Dep't of Homeland Sec.*, 264 F. Supp. 3d 165, 174 (D.D.C. 2017)

("Although an agency may waive the deliberative process privilege as to *a particular document*

by releasing it to the public, an agency does not waive the privilege as to an entire class of

documents by voluntarily releasing one document of that type.").

For example, in *Mobil Oil*, the Ninth Circuit found that, although the withheld documents

at issue unquestionably bore similarities to publicly disclosed documents, "crucial" distinctions

---

[3] *See Fitzgibbon v. CIA*, 911 F.2d 755, 766 (D.C. Cir. 1990) (finding that CIA's voluntary disclosure confirming its presence in a particular country during a certain timeframe did not act as a waiver of its claims to withhold information related to its presence in that country during other timeframes); *Hertzberg v. Veneman*, 273 F. Supp. 2d 67, 81 (D.D.C. 2003) (finding an agency's release of two investigative reports did not waive Exemption 5 claim over materials created in separate and distinct investigation, even though all the investigations focused on the same event).

such as the facts that the documents were created at different times and in different contexts supported a finding against waiver.  *Mobil Oil*, 879 F.2d at 702-03 (release of attorney notes created at enforcement conference sessions held on certain dates did not waive privilege for attorney notes created during session held on another date; release of one-page summary of civil penalty calculations did not waive privilege for document containing similar calculations created for settlement negotiations).  As the court observed, notes taken at different conference sessions, even if identical in format, are unlikely to be identical in content.  *Id.* at 702.  And releasing an internal document containing an agency's actual bottom line settlement position, in comparison to a document detailing its public litigation position, even if the documents contain the same information, may expose aspects of the agency's deliberative processes that warrant protection. *Id.* at 703.  *Mobil Oil*'s reasoning is equally applicable to the "crucial" distinctions between the 2018 OLC Opinion and 2017 legal memorandum and supports a finding that waiver has not occurred in the instant case.

2.   In rebuttal, the best Plaintiff could offer here is speculation that the 2018 OLC Opinion might replicate the advice provided in the legal memorandum.  But the D.C. Circuit has held that an agency's waiver of a FOIA exemption claim "cannot be based on mere public speculation."  *Wolf*, 473 F.3d at 378.  Regardless of whether the reasoning in the 2018 OLC Opinion could broadly apply to the 2017 airstrikes or whether it aligns with the President's publicly stated rationale for the 2017 strikes, *see* Order at 3, the Opinion plainly does not quote from, describe, discloses, or even refer to any aspect of the legal advice provided in the legal memorandum.  *See* Third Colborn Decl. ¶ 9.  With respect to the 2017 airstrikes, the Opinion at most cites to the same type of general public statements by Executive Branch officials and the President's 2017 notification to Congress that Plaintiff relied on in its summary judgment briefs

to support its waiver argument.  But the Opinion's citation to these 2017 public statements does not result in waiver any more than the statements themselves do.  *See* Defs.' Reply In Support of Mot. for Summ. J. & Opp'n to Pl.'s Cross-Mot. for Summ. J. ("Defs.' Reply") at 22-23, ECF No. 28.  Even if Plaintiff argues that public release of the 2018 OLC Opinion makes waiver "at least plausible," Order at 4, the *probability* (even the high probability) that withheld information has entered the public domain fails to meet the waiver standard.  *See AARC*, 334 F.3d at 60 (finding insufficient plaintiff's argument that it was highly probable that CIA had already publicly disclosed the withheld documents under the JFK Act).[4]  In short, even after the public release of the 2018 OLC Opinion, Plaintiff does not know (and can only guess) as to the specific information in the legal memorandum, and that is "strong evidence" that the withheld information it seeks is not in the public domain and, thus, that no waiver has occurred.  *Judicial Watch, Inc. v. U.S. Dep't of Def.*, 963 F. Supp. 2d 6, 13 (D.D.C. 2013).

    3.   The policy considerations underlying the D.C. Circuit's stringent waiver test also warrant against a finding of waiver based on the circumstances of this case.  The D.C. Circuit has emphasized its unwillingness to formulate a rule "that would require an agency to release all related materials any time it elected to give the public information" on a particular matter, because that would "give the Government a strong disincentive ever to provide its citizenry with briefings of any kind."  *Public Citizen v. Dep't of State*, 11 F.3d 198, 203 (D.C. Cir. 1993).  Such a rule would also reverberate in the FOIA context, undermining FOIA's statutory purpose to "implement a policy of broad disclosure of government records."  *Mobil Oil*, 879 F.2d at 701.  If

---

[4] In fact, in a case where it was undisputed that some of the withheld material had been publicly disclosed, the D.C. Circuit nonetheless found that that the plaintiff failed to establish waiver where it could not definitively show the exact portions of the materials that were released. *Davis*, 968 F.2d at 1280.  The evidence of waiver in this case is considerably more attenuated.

courts were to find waiver of applicable FOIA exemptions through release of separate but arguably related documents, it would inhibit agencies from making disclosures other than those explicitly required by law for fear that voluntary disclosure of exempt documents or information could expose other documents or information to risk of disclosure.  *Id.*; *see also Sealed Case*, 121 F.3d at 741 ("This limited approach to waiver in the executive privilege context is designed to ensure that agencies do not forego voluntarily disclosing some privileged material out of fear that by doing so they are exposing other, more sensitive documents.").  Finding waiver in this case, however, would go even further afield because the Opinion and legal memorandum are not truly "related"—they each address separate instances of legal advice, provided at different times, in relation to distinct Presidential decision-making processes.

The potential harm from expanding the D.C. Circuit's waiver doctrine to the circumstances here is particularly acute given the lack of a reasonable limiting principle.  As the Court noted, some aspects of the 2018 OLC Opinion's analysis are not particularized to the April 2018 airstrikes and a significant portion discusses uses of military force without prior congressional approval by previous presidents.  *See* Order at 3.  Assuming the "potentially broad applicability of its reasoning," *id.*, little would prevent a plaintiff from making the same waiver argument with respect to any privileged documents pertaining to the "over 100 instances of [similar] military deployments" in U.S. history noted in the Opinion, 2018 OLC Op. at *6, or to any similar military actions taken in the future.  The Court's Order points to one potential limiting factor:  that the interests invoked by the President in support of the April 2017 airstrikes "closely align[]" with the interests analyzed in the 2018 OLC Opinion.  Order at 3.  As the Opinion explains, however, these national security interests justifying the use of the President's Article II authority to direct military force have supported the deployment of U.S. troops by prior

presidents on "multiple occasions." 2018 OLC Op. at *12, *see id.* at *14 (noting "multiple occasions" when Presidents deployed troops to prevent or mitigate humanitarian disaster). Such an unchecked extension of the waiver doctrine would be fundamentally inconsistent with the "exacting" test required in this Circuit.

4.   Finally, the single, out-of-circuit decision in *New York Times Co. v. U.S. Dep't of Justice*, 756 F.3d 100 (2d Cir. 2014), on which Plaintiff's waiver argument principally relies would not command a different conclusion. In *New York Times*, the Second Circuit found that the Department of Justice ("DOJ") had lost its Exemption 5 claims over a privileged OLC Memorandum analyzing the lawfulness of the targeted killing of suspected terrorists. *Id.* at 116. In so ruling, not only did the Court incorrectly hold that the Government had adopted the advice provided in the withheld memorandum, despite the lack of any *express* statement of reliance upon the document, *id.* at 115-16, but it also erred in holding that DOJ waived the applicable privileges by publicly releasing a draft DOJ White Paper, which the Court found included "a detailed analysis of nearly all the legal reasoning contained in the OLC–DOD Memorandum." *Id.* at 116. But aside from its flawed analysis, which is inconsistent with this Circuit's strict waiver requirements, *New York Times* is materially distinguishable from the instant case, as explained in Defendants' Reply. *See* Defs.' Reply at 24-26, 27. The subsequent release of the 2018 OLC Opinion brings these cases no closer together.

For example, *New York Times* found that the Government had expressly adopted the advice of the OLC Memorandum. *See New York Times*, 756 F.3d. at 115 (quoting then-nominee for CIA Director John Brennan's congressional testimony that "[t]he Office of Legal Counsel advice establishes the legal boundaries within which we can operate."). As explained in Defendants' Reply, no evidence of adoption exists here, *see* Defs.' Reply at 16-17, 25, and

"[n]othing in the Opinion adopts [the legal memorandum] in any fashion," Third Colborn Decl. ¶ 10.[5]  Additionally, the Second Circuit's finding of waiver in *New York Times* rested on the Court's conclusion that the DOJ White Paper "virtually parallel[ed]" the withheld OLC Memorandum's legal analysis such that "nearly all the legal reasoning contained" in the withheld document was made public.  *Id.* at 116.  Here, however, OLC has explained that the Opinion "does not duplicate" the legal memorandum, Third Colborn Decl. ¶ 4, and has identified myriad ways in which the two documents are materially different, both in substance and process, *see id.* ¶¶ 5-8.  Finally, unlike in *New York Times*, there is no evidence (such as official public statements) acknowledging any "close relationship" between the 2018 OLC Opinion and the 2017 legal memorandum.  *New York Times*, 756 F.3d at 116 (relying on the Attorney General's "public[] acknowledge[ment]" to find a nexus between the public and withheld documents).  Indeed, "[n]othing in the Opinion quotes from, describes, discloses, or even refers to [the legal memorandum]."  Third Colborn Decl. ¶ 9.  Nor does the Opinion "make[] any reference at all to any legal advice that OLC or any other government attorney did or did not provide to the President or his senior advisers prior to the 2017 military strike against the Al Shayrat airfield."  *Id.*

On these facts, no waiver has occurred under binding D.C. Circuit precedent and, even if the Court applied the (flawed) reasoning of the Second Circuit's *New York Times* decision, the

---

[5] Nor does the Opinion indicate that the President has adopted the legal memorandum's reasoning or rationale as a basis for his decision.  *See* Third Colborn Decl. ¶ 10.  To the contrary, the only reference in the Opinion to the basis on which the President relied for the April 2017 strikes comes from the public Congressional notification letter transmitted by the President shortly after the strikes.  *See id.* (citing 2018 OLC Op. at 16).  "That letter, of course, does not adopt or even mention [the legal memorandum]" either.  *See id.* (citing Letter to Congressional Leaders on United States Military Operations in Syria, 2017 Daily Comp. Pres. Doc. 201700244 (Apr. 8, 2017)).

outcome would remain the same.

## II.     *In Camera* Review of the Legal Memorandum Is Unnecessary

Because the 2018 OLC Opinion does not, on its face and as affirmed by OLC, duplicate

the information withheld in the legal memorandum, it is not necessary for the Court to review the

documents *in camera* to determine whether waiver has occurred.  Where, as here, an agency's

public affidavits "provide specific information sufficient to place the documents within [an]

exemption category," and "this information is not contradicted in the record," nor is there

"evidence in the record of agency bad faith," *in camera* review of withheld information is not

necessary or appropriate.  *ACLU v. U.S. Dep't of Def.*, 628 F.3d 612, 626 (D.C. Cir. 2011); *see*

*Ctr. for Auto Safety v. EPA,* 731 F.2d 16, 20 (D.C. Cir. 1984) (finding a court has broad

discretion to determine the need for *in camera* review).[6]

Defendants have shown that the legal memorandum is a privileged document properly

withheld under Exemption 5 and have provided a supplemental OLC declaration, which is

entitled to a presumption of good faith, *see SafeCard Servs. Inc. v. SEC*, 926 F.2d 1197, 1200

(D.C. Cir. 1991), demonstrating that those claims were not waived by public release of the

Opinion.  Any argument to the contrary would be speculative, and such speculation does not

warrant *in camera* review.  *See Canning v. U.S. Dep't of State*, 134 F. Supp. 3d 490, 502 (D.D.C.

2015) ("*In camera* review is a 'last resort,' not a fishing expedition. . . .  If *in camera* review

were justified solely on the basis of Plaintiffs' 'doubt,' it is difficult to imagine any FOIA action

in which such review would not be warranted.").  Nor should *in camera* review be ordered

---

[6] Moreover, *in camera* review is particularly disfavored in cases, like this one, that involve
highly classified national security information.  *See Armstrong v. Exec. Office of the President*,
97 F.3d 575, 580 (D.C. Cir. 1996); *see* Gaviria Decl. ¶ 19.

simply on the theory that "it can't hurt."  *Quinon v. FBI*, 86 F.3d 1222, 1228 (D.D.C. 1996) (citation omitted).

Accordingly, the Court should not order *in camera* review of the legal memorandum.

## CONCLUSION

For the reasons explained above, and in their summary judgment briefs, Defendants have not waived any applicable FOIA exemption protecting the legal memorandum from disclosure, including through the subsequent release of the 2018 OLC Opinion.  The Court should enter summary judgment in favor of Defendants.


Dated: June 19, 2018                              Respectfully submitted,

                                                  CHAD A. READLER
                                                  Acting Assistant Attorney General

                                                  ELIZABETH J. SHAPIRO
                                                  Deputy Branch Director
                                                  Federal Programs Branch

                                                  */s/ Kathryn C. Davis*
                                                  KATHRYN C. DAVIS (DC Bar No. 985055)
                                                  Trial Attorney
                                                  United States Department of Justice
                                                  Civil Division, Federal Programs Branch
                                                  20 Massachusetts Avenue, NW, Room 6130
                                                  Washington, DC  20530
                                                  Tel:    (202) 616-8298
                                                  Fax:    (202) 616-8460
                                                  Email: Kathryn.C.Davis@usdoj.gov

                                                  *Attorneys for Defendants*

# EXHIBIT 1

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

THE PROTECT DEMOCRACY PROJECT, INC.  )
                                        )
               *Plaintiff,*          )     No. 17-CV-0842-CRC
                                          )
        v.                        )
                                          )
U.S. DEPARTMENT OF DEFENSE, *et al.*,    )
                                          )
              *Defendants.*     )
_____)

### FIRST SUPPLEMENTAL DECLARATION OF PATRICIA GAVIRIA, DIRECTOR, INFORMATION MANAGEMENT DIVISION, OFFICE OF THE DIRECTOR OF NATIONAL INTELLIGENCE

I, Patricia Gaviria, hereby declare and state:

1.    I am the Director of the Information Management Division (IMD), Office of Policy and Strategy, for the Office of the Director of National Intelligence (ODNI). I submitted a declaration in this case in support of Defendants' motion for summary judgment. *See* Declaration of Patricia Gaviria (Nov. 17, 2017), ECF No. 24-8. I submit this supplement to that declaration in response to the Court's June 5, 2018 Order regarding the release by the Department of Justice's Office of Legal Counsel ("OLC") of an opinion explaining the bases of OLC's conclusion that President Trump could lawfully direct airstrikes against Syria on April 13, 2018.

2.    In my original declaration, I explained that the Departments of Justice, State, and Defense had provided the Intelligence Community ("IC") with three copies of a legal memorandum assessing the legal authority for the U.S. Government's potential use of force against the Government of Syria after the Syrian Government's use of chemical weapons on April 4, 2017. I further explained that information within or referring to the background section of that memorandum contains currently and properly classified IC equities. These classified equities are

1

contained in a limited number of discrete words and phrases.  My original declaration sets forth the bases for the IC's determination that, if the 2017 Legal Memorandum is produced pursuant to the FOIA, these discrete words and phrases should be withheld because they are exempt from disclosure under FOIA Exemptions 1 and 3, 5 U.S.C. §§552(b)(1),(3).

3.     It is my understanding that Plaintiff does not challenge the application of these exemptions to the classified portions of the 2017 Legal Memorandum.  *See* Plaintiff's Memorandum of Law in Support of Plaintiff's Cross-Motion for Summary Judgment and in Opposition to Defendants' Motion for Summary Judgment at 8-10.

4.     In its June 5, 2018 Order, the Court directed the Government to address, among other issues, "whether OLC's release of its memorandum discussing the April 2018 missile strike on Syria constitutes a waiver of any applicable FOIA exemptions covering some or all of the 2017 legal memorandum... ."  In this supplemental declaration, I address the Court's question with regard to the IC's equities.

5.     After careful consideration, the IC has concluded that the 2018 Opinion does not contain or officially acknowledge the specific information that the IC has determined should be withheld from the 2017 Legal Memorandum.  In addition, the release of the 2018 Opinion has not changed the classification status of the limited number of discrete words and phrases that the IC has determined should be withheld from the 2017 Legal Memorandum.  Those discrete words and phrases continue to contain information that is currently and properly classified and is exempt from disclosure under FOIA Exemptions 1 and 3.

UNCLASSIFIED//FOR OFFICIAL USE ONLY

I certify under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

Executed this _19_ day of June 2018.

Patricia Gaviria
Director, Information Management Division

# EXHIBIT 2

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| THE PROTECT DEMOCRACY PROJECT, INC., | |
| *Plaintiff,* | |
| v. | No. 17-cv-0842-CRC |
| U.S. DEPARTMENT OF DEFENSE, *et al.*, | |
| *Defendants.* | |

**THIRD DECLARATION OF PAUL P. COLBORN**

I, Paul P. Colborn, declare as follows:

1.       I am a Special Counsel in the Office of Legal Counsel ("OLC") of the United States Department of Justice (the "Department") and a career member of the Senior Executive Service.  I joined OLC in 1986, and since 1987 I have had the responsibility, among other things, of supervising OLC's responses to requests it receives under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, as amended.  I have filed two prior declarations in this case.  *See Declaration of Paul P. Colborn* (Nov. 17, 2017) ("*First Colborn Declaration*") (ECF No. 24-3); *Second Declaration of Paul P. Colborn* ("*Second Colborn Declaration*") (ECF No. 28-2).  I submit this declaration in support of the Department's supplemental brief in this case, as requested in the Court's recent Order.  *Order* (June 5, 2018) (ECF 36).  The statements that follow are based on my personal knowledge, as well as on information provided to me by OLC attorneys and staff working under my direction, and by others with knowledge of the documents at issue in this case.

## BACKGROUND

2.　　Among the documents withheld by OLC in this litigation is a record identified as

"Doc. 2, OLC 1."[1] *First Colborn Declaration* ¶ 18.  As explained previously, that document is

"a classified legal advice document prepared by an interagency group of attorneys—including

OLC attorneys—for the purpose of providing advice and recommendations to the President

and/or other senior Executive Branch officials regarding the legal basis for potential military

action." *Id.*  As noted on the Government's combined *Vaughn* Index, the document was undated,

but "based on either the dates of associated transmittal emails or consultation with the

custodian," it is believed to have been completed on April 6, 2017.  *See Defendants'* Vaughn

*Index* at 1-2 (Nov. 17, 2017) (ECF No. 24-7).  Without disclosing exempt information about its

contents, OLC and two other defendant agencies identified versions of this document as

responsive to Plaintiff's FOIA Request in this matter, as narrowed, which sought records

"analyzing or explaining the President's legal authority to launch the April 6, 2017 military

airstrike against a Syrian government airbase (Shayrat Airfield) in Syria." *See Joint Status

Report* (Jul. 28, 2017) (ECF No. 17); *see also First Colborn Declaration* Ex. A (original FOIA

request seeking records "reflecting, discussing, or otherwise relating to the April 6, 2017 military

strike on Syria and/or the President's legal authority to launch such a strike.").

3.　　As noted in the Order, OLC recently completed and published an opinion for the

Counsel to the President.  *See April 2018 Airstrikes Against Syrian Chemical-Weapons

Facilities*, 42 Op. O.L.C. ___ (May 31, 2018) ("2018 Opinion"),

https://www.justice.gov/olc/opinion/file/1067551/download.  As stated in the 2018 Opinion's

---

[1] It is my understanding that the Department of State located an identical copy of the legal
memorandum in response to Plaintiff's FOIA request, and that the Department of Defense
located a substantially similar prior draft version. *See Defendants'* Vaughn *Index* at 1, 3 (Nov.
17, 2017) (ECF No. 24-7).

introduction, on April 13, 2018, the President directed airstrikes "against three facilities associated with the chemical-weapons capability" of Syria. *Id.* at *1. As the Opinion indicates, prior to the strikes OLC attorneys "advised that the President could lawfully direct them," and subsequently the Opinion was prepared to "explain[] the bases for our conclusion." *Id.*

## COMPARISON OF THE DOCUMENTS

4.      Following the Court's Order, I personally re-reviewed both the 2018 Opinion and the interagency legal advice document identified as OLC 1. As discussed below, the Opinion does not duplicate the content of OLC 1.

5.      Aside from the fact that both discuss the President's legal authority to direct military actions in Syria, the two documents have little in common. The following chart identifies some of the most obvious facial differences already on the public record:

|  | **OLC 1** | **2018 Opinion** |
|---|---|---|
| **Date** | Presumed April 6, 2017 | May 31, 2018 |
| **Author** | Interagency group of attorneys, including some OLC attorneys | Steven A. Engel, Assistant Attorney General, Office of Legal Counsel |
| **Subject** | Legal advice prior to April 6, 2017 U.S. military strike against Al Shayrat airfield in Syria | Analysis underlying legal advice provided prior to April 13, 2018 U.S. military strike against three Syrian chemical weapons facilities |
| **Length** | 7 pages | 22 pages |
| **Classification** | Marked TOP SECRET | Unclassified |
| **Recipient** | Unmarked, provided to the Legal Adviser to the National Security Council ("NSC") | Counsel to the President |

6.      Based on my personal review, I can affirm that the content of the documents is also quite different, although it is not feasible to describe these differences in more detail on the public record without revealing the very information that is subject to protection. An order compelling disclosure of OLC 1 would, therefore, reveal information that is not publicly available.

7.     These facial and substantive differences are also indicative of the different

processes by which the documents were created and the fundamentally different nature of the

two documents.  OLC provides legal advice, both formal and informal, in a variety of different

ways depending on the context and the needs of its clients.  OLC 1 is not advice from OLC.  As

explained previously, OLC 1 "was authored by an interagency group of lawyers, coordinated by

lawyers on the staff of the NSC." *First Colborn Declaration* ¶ 22.  OLC attorneys were part of

that interagency group and thus were participants in the interagency deliberation to develop that

legal advice.  By contrast, an OLC opinion is prepared solely by OLC attorneys and signed by

the head of the office or one of his deputies, consistent with the longstanding practices of the

office.

## **WAIVER/ADOPTION**

8.     The two documents are of substantially different character and were prepared in

different contexts, by different entities, for different recipients, and at different times in advance

of different presidential decisions.  Therefore, even assuming without conceding that both

documents may contain some similar legal analysis, publication of the 2018 Opinion could only

result in the abrogation of  the privileges protecting OLC 1 if the Opinion waived privilege by

expressly disclosing OLC 1's contents or if it expressly adopted OLC 1's reasoning.  As

discussed below, however, the Opinion does not waive privilege over any part of OLC 1, nor

does it adopt any part of OLC 1 as its reasoning.

9.     In order to effect a waiver of the privileges protecting OLC 1, in whole or in part,

the 2018 Opinion would have to quote from, describe, or otherwise disclose specific details

about the content of OLC 1.  Nothing in the Opinion quotes from, describes, discloses, or even

refers to OLC 1.  Indeed, no part of the Opinion makes any reference at all to any legal advice

4

that OLC or any other government attorney did or did not provide to the President or his senior advisers prior to the 2017 military strike against the Al Shayrat airfield.

10.     In order to effect an adoption of OLC 1, in whole or in part, the 2018 Opinion would have to either expressly adopt OLC 1 as its own reasoning or expressly state that a decisionmaker for whom OLC is authorized to speak adopted OLC 1 as the rationale for a decision.  To begin with, the Opinion does not even mention OLC 1.  Nothing in the Opinion adopts OLC 1 in any fashion.  Moreover, even if OLC could authoritatively state the basis of the President's decisions, which it is not authorized to do, the Opinion does not indicate that the President adopted OLC 1.  To the contrary, the only time the Opinion identifies the basis on which the President relied for the April 2017 strikes, it cites only to the public Congressional notification letter transmitted by the President shortly after the strikes.  *See* 2018 Opinion at *16 (citing Letter to Congressional Leaders on United States Military Operations in Syria, 2017 Daily Comp. Pres. Doc. 201700244 (Apr. 8, 2017) ("2017 Congressional Notification")).  That letter, of course, does not adopt or even mention OLC 1.  *See* 2017 Congressional Notification.

## CONFIDENTIALITY

11.     As stated previously, OLC 1 was intended to be confidential, and to OLC's knowledge, it has not been publicly disclosed and its confidentiality has been maintained.  *See First Colborn Declaration* ¶ 31; *Second Colborn Declaration* ¶ 2.


I declare under penalty of perjury that the foregoing is true and correct.

Executed: June  _19_, 2018, Washington, D.C.

_Paul P. Colborn_
_____
PAUL P. COLBORN

5